768 So.2d 186 (2000)
Donald CAPAROTTI, Plaintiff-Appellant,
v.
SHREVEPORT PIRATES FOOTBALL CLUB, Defendant-Appellee.
No. 33,570-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
Rehearing Denied September 21, 2000.
*188 Kevin L. Camel, Lake Charles, Counsel for Appellant.
Patricia L. Barfield, Baton Rouge, Counsel for Appellee.
Before WILLIAMS, GASKINS and CRIGLER (Pro Tempore), JJ.
WILLIAMS, Judge.
In this workers' compensation matter, the claimant, Donald Caparotti, appeals a judgment awarding him supplemental *189 earnings benefits (SEB) of $85.16 per week from August 1, 1997 through December 31, 1998, subject to a credit in favor of defendants for any previous payments. The workers' compensation judge (WCJ) found that the claimant's average weekly wage was $487.12, based on an annual salary of $25,330 with a current earning capacity of $18,687 per year. The defendants, Shreveport Pirates, Inc. and Louisiana Workers' Compensation Corporation (LWCC), answered the appeal alleging that the WCJ erred in overruling the exception of res judicata as to the average weekly wage and in awarding SEB. For the following reasons, we amend and affirm as amended.

FACTS
The claimant, Donald Caparotti, was employed as a professional football player for the 1994-95 season with the now defunct Shreveport Pirates of the Canadian Football League. The employment contract provided that the claimant would receive a base salary of $25,000 for the season. In September 1994, the claimant tore his right anterior cruciate ligament during a game. Claimant was treated by Dr. Goral. The parties agree that the claimant is unable to return to work as a professional football player.
Following the accident, the team's workers' compensation carrier, LWCC, began paying claimant weekly temporary total disability (TTD) benefits. While recovering from his injury, claimant moved back to his home in Maryland and decided to pursue a career as a personal physical fitness trainer. The claimant attended courses and obtained the required Maryland personal trainer license.
In July 1995, claimant began earning income as a personal fitness trainer. The LWCC claims representative, Annette Robinson, instructed claimant to report his earnings on LDOL Form 1020. The LWCC discontinued benefits from February 1996 to May 1996. Subsequently, the claimant filed his first disputed claim for benefits with the Office of Workers' Compensation. Prior to the hearing, the parties agreed that claimant was entitled to the maximum compensation rate of $323 per week. The LWCC agreed to pay the past due benefits with penalties and attorney fees. The claimant signed a "Receipt and Release" and the WCJ signed an order of dismissal, reserving the claimant's right to seek SEB and LWCC's right to seek a reduction in benefits.
LWCC hired Jamie Schenker, a vocational rehabilitation consultant from Maryland, to evaluate claimant's employment potential. Schenker met once with the claimant, who has a college degree in education and lives in Damascus, Maryland. Schenker performed a labor market survey to locate suitable jobs available to claimant and in September 1996 sent him notice of four positions, two of which were located in Washington, D.C. and two in Maryland. In June 1997, Schenker began sending additional job openings to the claimant for various positions, including fitness trainer, insurance claims representative and clerk at the National Archives. The claimant submitted applications for these positions but did not receive any job offers.
LWCC discontinued claimant's TTD benefits and began paying SEB based upon claimant's reported zero net monthly income on Form 1020. In August 1997, after receiving Schenker's labor market survey, LWCC reduced the SEB payments in reliance on information of a position at Geico Insurance Company located in Fredericksburg, VA, with an annual salary of approximately $16,900. During the period from August 1997 through December 1998, LWCC paid total benefits of $5,628 in several checks covering various periods of time.
The claimant filed a second disputed claim for compensation in November 1997, seeking a determination of his average weekly wage, an award of SEB based on the maximum weekly compensation rate of *190 $323, penalties and attorney fees. At the OWC hearing, LWCC raised an exception of res judicata concerning the calculation of the average weekly wage and the issue was deferred to the merits.
The WCJ overruled the exception, finding that the receipt and release applied only to the time period prior to its signing. The WCJ found that claimant's pre-injury annual salary was $25,330, resulting in an average weekly wage of $487.12. The WCJ determined that LWCC incorrectly relied on the salary of the Geico position to reduce benefits.
However, the WCJ found that a job at the National Archives was available to claimant when he was notified on July 8, 1997, and that he would have earned an annual salary of $18,687. The WCJ awarded SEB of $85.16 per week for the period of August 1, 1997 through December 31, 1998, and assessed a penalty of $2,000 and attorney fees of $5,000 for LWCC's failure to timely pay benefits.
The claimant appeals the WCJ's calculation of the average weekly wage and the finding that a job within the claimant's capabilities and reasonable geographic region was available. LWCC answered the appeal alleging that the WCJ erred in overruling the exception of res judicata and in awarding SEB.

DISCUSSION

Res Judicata
The LWCC contends the WCJ erred in overruling the exception of res judicata. LWCC argues that the claim regarding the calculation of claimant's average weekly wage was previously dismissed.
A valid and final judgment is conclusive between the same parties in any subsequent action with respect to any issue actually litigated. LSA-R.S. 13:4231. An order of dismissal with prejudice has the effect of a final judgment. LSA-C.C.P. art. 1673.
Here, the WCJ correctly noted that the prior order of dismissal had dismissed the claimant's average weekly wage claim specifically "for the period from the date of the accident through July 11, 1997." Thus, the dismissal and release only affected the claimant's average weekly wage claim with respect to the expressly stated time period. Consequently, we cannot say the WCJ erred in overruling the res judicata exception. The assignment of error lacks merit.

Average Weekly Wage
The claimant contends the WCJ erred in finding that his pre-injury annual salary was $25,330. Claimant argues that because the employer provided him with fringe benefits, his pre-injury wage was actually $28,243 annually.
The value of fringe benefits, if proven, will be included in the calculation of weekly wages for the purpose of determining the compensation rate if such benefits were fairly contemplated by the parties to the contract of employment. Transportation Ins. Co. v. Pool, 30,250-30,253 (La.App.2d Cir.5/13/98), 714 So.2d 153, writ denied, 98-1566, 98-1616 (La.9/25/98), 725 So.2d 486, 488. We recognize that LSA-R.S. 23:1021was amended by Acts 1999, No. 751 to add subparagraph 10(f), concerning the exclusion of nontaxable benefits from the determination of average weekly wages. However, since claimant was injured in 1994, this section is not applicable to the present case. See Moses v. Grambling State, 33,185 (La. App.2d Cir.5/15/00), 762 So.2d 191.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable in light of the record as a whole. Freeman, supra; Stobart v. State, 617 So.2d 880 (La.1993).
*191 Here, the employer did not dispute that claimant's total meal per diem was $330 for the three travel games in which he played. The claimant testified that the employer also paid for his health insurance coverage and matched the amounts deducted from his paycheck for the player pension plan. However, claimant did not know the amount the team paid for his health insurance and did not introduce into evidence his employment contract or other corroborating proof of such payments. In light of the claimant's uncertainty about the amount paid by the employer for health coverage and the lack of documentary proof, we cannot say the WCJ was clearly wrong in declining to include the value of the alleged fringe benefits in the calculation of the compensation rate and in concluding that the claimant's pre-injury salary was $25,330. The assignment of error lacks merit.

Supplemental Earnings Benefits
The claimant contends the WCJ erred in finding that defendants proved that a suitable job was available in his reasonable geographic region. In their answer to the appeal, the defendants argue that the WCJ erred in awarding SEB to claimant because he did not prove an inability to earn at least 90% of his pre-injury wage.
The purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993). An employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. LSA-R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks v. Industrial Roofing & Sheet Metal Works, Inc.. 96-2840 (La.7/1/97), 696 So.2d 551. Workers' compensation is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the claim for SEB or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee, or was available in his or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Banks, supra. Actual job placement is not required. Romero v. Grey Wolf Drilling Company, 594 So.2d 1008 (La.App. 3rd Cir.1992).
In the present case, the evidence shows that claimant remained under work restrictions imposed by Dr. Goral at the time of trial and could not perform his previous job as a professional athlete. Although claimant was earning income as a personal fitness trainer, the financial information presented, including an analysis by LWCC's expert witness, Mark Trombetta, C.P.A., indicates that the net cash available to claimant after expenses was approximately $15,775 in 1997 and $16,312 in 1998. Based on the evidence in the record, we cannot say the WCJ was clearly wrong in finding that the claimant was unable to earn 90% of his pre-injury wage. Thus, LWCC's argument lacks merit.
Consequently, in order to avoid paying SEB to claimant or to establish his earning capacity, LWCC was required to prove that a suitable job was available. An employer can discharge its burden by establishing (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region, (2) the amount of wages that an employee with claimant's experience and training can expect to earn in that job, and (3) an actual position available for that particular job at the time that the claimant received notification of the *192 job's existence. Banks, supra. A "suitable job" means a job that the claimant is not only physically capable of performing, but one that also falls within the limits of the claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education. Banks, supra.
In the present case, LWCC introduced into evidence a list of jobs compiled by Jamie Schenker, a vocational rehabilitation consultant. Schenker had contacted the employers and obtained job descriptions, which were approved by Dr. Goral and mailed to the claimant. Relying on this "labor market survey," LWCC in August 1997 reduced the amount of claimant's SEB based on a position at Geico Insurance Company paying $8.13 per hour. Assuming a 40-hour work week, LWCC calculated that claimant could earn approximately $16,900 annually, with an average weekly wage of $325. This job was located in Fredericksburg, VA, which claimant testified was almost a two-hour drive from his residence. The evidence indicates that although Dr. Goral had approved the job description, he was not informed of the daily driving time which the position would require, and so could not have considered the effect of such a commute on claimant's knee.
Based on this record, we cannot say the WCJ was clearly wrong in concluding that the Geico position was not a suitable job within the claimant's reasonable geographic region. Additionally, the WCJ reviewed the other job listings compiled by Schenker and found that due to his physical restrictions, claimant could not perform the fitness trainer positions at the Chevy Chase and Washington health clubs. The WCJ further determined that the State Farm, Allstate and Sinai job descriptions failed to either adequately set forth the physical requirements of the position or sufficiently specify the salary which claimant could expect to earn. In light of the evidence presented, we cannot say these factual findings were clearly wrong.
The WCJ found that LWCC had proved that claimant was capable of performing the library or procurement clerk positions at the National Archives, and that these jobs were available to claimant. However, we note that these positions were included with several clerical jobs listed in a general public notice entitled "Open Competition Announcement," which was issued in February 1997. The notice does not indicate the specific number of openings for each job type, or whether any library or procurement clerk position was actually open when the claimant received the notice in July 1997.
As previously noted, pursuant to Banks, LWCC could sustain its burden of establishing claimant's earning capacity with evidence of an actual position available for a particular suitable job. Concerning availability of the library or procurement clerk positions, Schenker testified only that she was told that the National Archives "continuously" accepts applications, which are kept on file for 90 days and that positions are filled "as they come available." Contrary to the WCJ's finding, the foregoing evidence does not satisfy the Banks requirement of proof that an actual position was available for the particular library or procurement clerk job at the time claimant received notice. Consequently, the WCJ was clearly wrong in finding that LWCC established the availability of these positions.
However, the evidence shows that claimant, contrary to his contention, was earning income while working as a physical fitness trainer during the period of August 1997 through December 1998. LWCC presented testimony by Trombetta, who stated that he had reviewed the claimant's financial records in accordance with generally accepted accounting principles. Trombetta prepared a cash flow work sheet listing the income and expenses of claimant's business for the years 1997 and *193 1998. Trombetta explained that in deriving the figure for annual cash available, he had not deducted the amounts for depreciation or amortization as had claimant, because those items were not considered cash expenses.
Trombetta testified that in 1997, the claimant's business, First Team Fitness, received total cash income of $38,132 and paid total cash expenses of $22,357, resulting in net cash available for personal expenses of approximately $15,775. In 1998, claimant's business received total income of $36,228 and paid total cash expenses of $19,916, resulting in net cash available of $16,312.
Profits from a sole proprietorship should be treated in the same manner as wages. Clark v. Clark Trucking, 28,405 (La.App.2d Cir.6/26/96), 679 So.2d 157. In light of the evidence presented, we are persuaded that Trombetta's calculation of net income, or profit, received by First Team Fitness accurately reflects the claimant's wage earning capacity for 1997 and 1998. Additionally, the claimant has been physically capable of performing the fitness trainer job, which falls within the limits of his age, experience and education. Therefore, the evidence establishes that in 1997, claimant earned annual wages of $15,775, with an average weekly wage of $303.37. For 1998, the claimant earned an annual wage of $16,312, with an average weekly wage of $313.69.
The amount of SEB is equal to sixty-six and two-thirds percent of the difference between the average monthly wage at the time of injury and the average monthly wages earned in any month thereafter in any self-employment. The average monthly wage is computed as 4.3 times the average weekly wage. LSA-R.S. 23:1221(3)(a).
Thus, for the year 1997, the claimant's pre-injury average weekly wage of $487.12 computes to a pre-injury average monthly wage of $2,094.62. Two-thirds of the difference between this amount and the earned average monthly wage of $1,304.49 is $526.75, resulting in a weekly compensation benefit of $122.50 for the period of August 1, 1997 through December 31, 1997. In 1998, the two-thirds difference between the pre-injury average monthly wage and the earned average monthly wage of $1,348.87 is $497.17, resulting in a weekly compensation benefit of $115.62 for the period of January 1, 1998 through December 31, 1998. Accordingly, the WCJ's judgment shall be amended to award claimant SEB in these revised amounts, subject to a credit for any benefits previously paid by the defendants for the same period.

Attorney Fees on Appeal
Both the claimant and LWCC seek additional attorney fees for work performed in connection with the appeal. An increase in attorney fees is usually awarded when the defendant appeals but does not obtain relief, and when the appeal has necessitated additional work on the part of claimant's counsel. Smith v. Tudor Construction, 25,783 (La.App.2d Cir.5/4/94), 637 So.2d 666; Miller v. City of New Orleans, 95-1005 (La.App. 4th Cir. 12/14/95), 665 So.2d 1293. The award of attorney fees must be reasonable based on the degree of skill involved and the volume of work performed in prosecuting the claim. Henton v. Walker & Wells Contractors, Inc., 25,821 (La.App.2d Cir.5/4/94), 637 So.2d 672, writ denied, 94-1491 (La.9/23/94), 642 So.2d 1295.
Here, the claimant voluntarily filed an appeal of the judgment alleging that the WCJ erred in determining the amount of his pre-injury wage and in awarding less than the maximum rate of SEB. Thus, this is not a situation where claimant's counsel was required to do additional work to defend the judgment in response to an appeal initiated by the defendants. Consequently, we conclude that an award of attorney fees for additional work on appeal is not warranted.
LWCC answered the appeal, alleging that the WCJ erred in overruling *194 the exception of res judicata and in awarding any SEB. LWCC failed to obtain relief on these issues and has not shown a basis for an award of attorney fees on appeal.

CONCLUSION
For the foregoing reasons, that portion of the judgment setting claimant's current earning capacity and awarding weekly compensation benefits of $85.16 is amended, and the claimant, Donald Caparotti, is hereby awarded weekly SEB payments of $122.50 for the period of August 1, 1997 through December 31, 1997 and weekly SEB of $115.62 from January 1, 1998 through December 31, 1998, subject to a credit for defendants' prior payments. The judgment, as amended, is otherwise affirmed. Costs of this appeal are assessed to the defendants, Shreveport Pirates, Inc. and Louisiana Workers' Compensation Corporation.
AMENDED, AND AFFIRMED AS AMENDED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, and GASKINS, JJ., and CRIGLER (Pro Tempore).
Rehearing denied.