I,WILLIAMS, Judge.
The defendant, Dollar General, appeals a judgment in favor of the claimant, Doris Frazier. The workers’ compensation judge (WCJ) awarded claimant temporary total disability (TTD) benefits and supplemental earnings benefits (SEB) and ordered defendant to pay the cost of a neurological evaluation. The WCJ also awarded claimant penalties and attorney fees for defendant’s failure to pay TTD benefits and the neurologist bill. The claimant filed an answer seeking an increased award for penalties and attorney fees and additional attorney fees for this appeal. For the following reasons, we amend the judgment and affirm as amended.
FACTS
On January 2, 2001, the claimant injured her lower back while working at a Dollar General store in Arcadia, Louisiana, when a roller conveyer tipped over and struck her as she unloaded a truck. The claimant went to the Christus Schumpert Arcadia Clinic and was examined by Dr. Terry Gardner, who diagnosed her with a low *1268 back strain. Claimant’s lumbar spine x-rays were normal. Dr. Gardner restricted claimant to light duty work and released her to return to regular duty work on January 5, 2001. On this date, however, the claimant performed light duty work as a cashier for two hours and then returned to the Arcadia Clinic complaining of back pain. Dr. Gardner restricted her from work until January 7, 2001, when claimant returned to the store and worked a full day as a cashier.
On January 8, 2001, the claimant again reported to the clinic with a complaint of back pain and was restricted from work on January 9, 2001. On January 10, 2001, claimant worked as a cashier for less than two hours hand returned to Dr. Gardner, who excused her from work and referred her to an orthopedist. Claimant did not return to work after that date.
On January 17, 2001, claimant visited Dr. Albert E. Dean, Jr., an orthopedic surgeon, with a complaint of persistent pain in her lower back and left leg. Dr. Dean reported that there was limited flex-ion in claimant’s back and that x-rays of the lumbar spine were normal. He prescribed Vioxx and recommended physical therapy. Dr. Dean restricted the claimant to light duty work. The next day, claimant saw Dr. Kushal Agarwal at the Jackson Parish Family Clinic complaining of back pain. Dr. Agarwal restricted claimant from doing any work for the period of January 18 through January 28, 2001.
In February 2001, an MRI of claimant’s lumbar spine was performed and showed a mild disc bulge at the L4-5 space without any narrowing of the neural foramen. On February 19, 2001, claimant returned to Dr. Dean with a complaint of back and left leg pain. She said that her left leg “went out” from under her the day before and she had fallen in her yard.
Dollar General paid claimant’s medical expenses, but refused to pay any workers’ compensation benefits or to pay for a neurological evaluation. In April 2001, the claimant filed a disputed claim for compensation with the Office of Workers’ Compensation (OWC) seeking indemnity benefits, approval for an evaluation by a neurosurgeon, penalties and attorney fees.
On April 20, 2001, claimant reported to Dr. Dean that she felt left knee pain as a result of her fall in February. Dollar General terminated claimant’s employment in May 2001 alleging that she had falsified | ^personnel schedules. In August 2001, the claimant’s attorney asked Dr. Dean if her back problem could have caused her left leg pain. Dr. Dean responded that based on the MRI, he could not say that claimant’s back injury caused her left leg symptoms. Dr. Dean last saw the claimant on August 22, 2001, when he recommended a repeat MRI of her lower back and restricted her to sedentary work.
In December 2001, claimant filed a motion requesting that defendant, Dollar General, be ordered to authorize orthopedic treatment for her left knee with Dr. Edward Morgan. In January 2002, claimant amended her motion to seek approval of a second lumbar MRI and an examination by Dr. Marco Ramos, a neurosurgeon. Subsequently, the WCJ denied the request for treatment by Dr. Morgan, but ordered defendant to approve the MRI and an evaluation by Dr. Ramos.
On February 12, 2002, claimant was examined by Dr. Ramos, who reported a positive straight leg-raising test on the left side. In March 2002, a repeat MRI of claimant’s lumbar spine showed mild desiccation of the L5-S1 disc without any neurological involvement. Despite the WCJ’s prior order, defendant refused to pay the cost of claimant’s initial evaluation by Dr. Ramos. Subsequently, Dr. Ramos or *1269 dered an EMG nerve conduction test, which did not indicate any evidence of radiculopathy. Dr. Ramos recommended another program of physical therapy and prescribed pain relief medication to alleviate claimant’s symptoms.
At the OWC hearing, the parties stipulated that claimant had sustained a work-related accident. After hearing the evidence, the WCJ |4ordered defendant to pay TTD benefits for January 6 and January 9, 2001 and from February 2-18, 2001, based on an average weekly wage of $224.95. The WCJ found that claimant .was incapable of earning 90% of her pre-injury wage and ordered defendant to pay SEB for the periods of January 17, 2001 to February 1, 2001 and from February 19, 2001 up to the date of trial and continuing. The WCJ determined that claimant had not forfeited her benefits under LSA-R.S. 23:1208 and ordered defendant to pay $300 for the neurological evaluation.
The WCJ assessed defendant with penalties of $2,000 and attorney fees of $2,000 for the failure to reasonably controvert its liability for TTD and for refusing to pay the cost of the evaluation by Dr. Ramos. The defendant appeals the judgment. The claimant filed an answer to the appeal seeking an increase in the award of penalties and attorney fees.
DISCUSSION
The defendant contends the WCJ erred in awarding claimant TTD benefits. Defendant argues that claimant is not entitled to TTD because she failed to produce any objective medical evidence of a disabling condition.
An injured employee seeking TTD benefits must prove by clear and convincing evidence that she is physically unable to engage in any employment, regardless of its nature, including employment while working in pain. LSA-R.S. 23:1221(1); Atwood v. Ewing Timber, Inc., 34,045 (La.App.2d Cir.12/15/00), 774 So.2d 1140. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable. Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir.12/6/95), 665 So.2d 657. A claimant may prove disability through medical and lay testimony. The WCJ must weigh all of the evidence to determine if the claimant has met his burden of proving temporary total disability. Atwood v. Ewing Timber, supra.
In the present case, claimant introduced into evidence the medical reports of her visits to several physicians. On the date of the work accident, claimant was seen by Dr. Gardner, who noted muscle spasms in her lower back. Dr. Gardner restricted claimant to light duty work until January 5, 2001. Claimant returned to work the same day and operated a cash register as light duty work for the remainder of her shift.
On January 5, 2001, the claimant worked a short time at the cash register, but returned to the clinic complaining of back pain. During his examination, Dr. Gardner noted muscle spasms in claimant’s lower back. He instructed her to stay off work and get bed rest on January 6, 2001 and return to work the next day. Dr. Gardner told claimant to return to the clinic on January 8 if she was still having pain. Claimant worked a full shift as cashier on January 7, 2001 and worked until 2:30 p.m. on January 8, when she returned to the clinic due to continued back pain. Dr. Gardner reported muscle spasms in claimant’s lower back and instructed her to remain off work on January 9, 2001 and return to light duty work with lifting restrictions the following day. On January 10, 2001, claimant worked for just over one hour before returning to the clinic with a *1270 complaint of continued pain in her 'back and left leg. Dr. Gardner again noted a muscle spasm in claimant’s lower back, diagnosed her with back strain and referred lfiher to Dr. Dean, an orthopedist.
On January 17, 2001, Dr. Dean examined the claimant, who complained of pain in her lower back and left leg. Dr. Dean found some limitation of flexion in claimant’s lower back. He diagnosed claimant with lumbar sprain and recommended physical therapy. Dr. Dean instructed claimant to return to light duty work on January 18, 2001.
However, the claimant presented on February 2, 2001, complaining of more severe back pain extending down her left leg. She stated that the pain prevented her from standing long enough to work as a cashier or to wash dishes. Dr. Dean noted that straight leg raising caused some pain in the claimant’s lower back. He ordered an MRI of the lumbar spine and instructed claimant to remain off work until the results were obtained. The MRI showed a mild disc bulge at the L4-5 space. Claimant next saw Dr. Dean on February 19, 2001, when he released her to return to light duty work with instructions to avoid any twisting, bending and prolonged standing or walking.
The record shows that the claimant introduced medical evidence demonstrating that on the dates of January 6 and January 9, 2001, and from February 2 through February 18, 2001, she was instructed by physicians not to work because of her injured physical condition, including the objective finding of muscle spasms and significant pain. In addition, the claimant testified that she could not work at those times because she was undergoing treatment for her work-related injury. Based upon the medical records and testimony presented, we cannot say that the WCJ was clearly wrong in | finding that claimant established by clear and convincing evidence that during the above specified dates, she was unable to perform any employment and was entitled to receive TTD benefits. The assignment of error lacks merit.

Supplemental Earnings Benefits

The defendant contends the WCJ erred in awarding SEB to claimant. Defendant argues that claimant failed to prove her inability to earn at least 90% of her pre-injury weekly wage.
The purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993); Caparotti v. Shreveport Pirates Football Club, 33,570 (La.App.2d Cir.8/23/00), 768 So.2d 186. An employee is entitled to receive SEB if she sustains a work-related injury that results in her inability to earn ninety (90%) or more of her average pre-injury wage. LSA-R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in an inability to earn that amount under the facts and circumstances of the individual case. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the claim for SEB or establish the employee’s earning capacity, must prove by a preponderance of the evidence that the worker is physically able to perform a certain job, which was offered to the employee or was available in her or the employer’s community or reasonable geographic region. LSA-R.S. 23:1221(3) (c) (i); Banks, supra.
In the present case, claimant testified that after her work injury she sought treatment for persistent back pain and *1271 that her physicians restricted her to light duty work with limited standing, bending or lifting. Claimant stated that these restrictions prevented her from performing her prior job of assistant store manager, which involved unloading trucks, mopping the floor and stocking merchandise. Claimant testified that although she tried to perform the cashier position assigned by the defendant, her continuing back pain prevented her from standing for the prolonged periods required and that there was no way for her to sit down. Claimant stated that she was still experiencing back pain at the time of trial.
Medical' records show that Dr. Dean prescribed physical therapy for claimant in February 2001, and placed her on light duty with no prolonged standing or walking. In March 2001, Dr. Dean reduced claimant to sedentary duty because she complained her back pain had worsened. Sedentary duty was described as lifting a maximum of ten pounds with limited standing and walking. In April 2001, Dr. Dean noted that claimant’s back pain persisted and that a straight leg-raising test was positive on the left side. Dr. Dean restricted claimant to light duty and requested a repeat MRI of the lumbar spine. He again recommended a repeat MRI in August 2001.
In the initial neurological evaluation by Dr. Ramos in February 2002, the claimant continued to complain of recurring low back pain radiating to the left leg. Dr. Ramos noted limited range of motion of the lumbosacral |9spine with a positive straight leg-raising test on the left side. In March 2002, Dr. Ramos noted that claimant continued to complain of low back pain and he reviewed the results of the repeat MRI, which showed mild desiccation of the L5-S1 disc with no obvious indication of disc herniation. Dr. Ramos opined that claimant was not in a condition to resume any type of work activity at that time and he did not revise this opinion after his August 2002 examination.
The testimony and medical evidence support a finding that claimant could not perform her previous job of assistant manager or work a complete shift as cashier while standing for prolonged periods. Thus, based on the evidence presented and the degree of work restrictions placed on the claimant, we cannot say the WCJ was clearly wrong in finding that claimant was unable to earn 90% of her pre-injury wage.
Consequently, in order to avoid paying SEB to claimant or to establish her earning capacity, the defendant was required to prove that a suitable job was available. An employer can discharge its burden by establishing (1) the existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region, (2) the amount of wages that an employee with claimant’s experience and training can expect to earn in that job, and (3) an actual position available for that particular job at the time that the claimant received notification of the job’s existence. Banks, supra. A “suitable job” means a job that the claimant is not only physically capable of performing, but one that also falls within the limits of the claimant’s age, |inexperience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education. Banks, supra.
In the present case, defendant offered the testimony of Cynthia McBride, the store manager at the time claimant was injured. McBride testified that she assigned claimant to work at the cash register as a means of meeting the light duty restriction recommended by claimant’s physicians. McBride stated that claimant *1272 “was always offered any type of light duty at the store.” However, McBride did not identify any light duty job as available other than that of cashier.
McBride acknowledged that the cashier job required standing for extended time periods, but stated that the store would have accommodated any restriction given by claimant’s physician and could have placed a stool at the cash register to allow her to sit while working if needed. However, McBride admitted that at the time of these events, the defendant’s Arcadia store did not even have a stool on the premises.
In February 2001, Dr. Dean restricted claimant to light duty with no bending or twisting and no prolonged standing or walking. In March 2001, Dr. Dean restricted claimant to sedentary duty. In his deposition, Dean explained that with this restriction, the cashier job was questionable unless claimant could be seated while working. In April 2001, Dr. Dean returned claimant to light duty and recommended a repeat lumbar MRI. In August 2001, claimant again complained of recurring back and left leg pain. Dr. Dean observed that claimant appeared to be in a “good deal of pain” and ^restricted claimant to sedentary duty. In his deposition, Dean testified that the sedentary restriction applied mainly to claimant’s knee and that the restriction for her back would have been no heavy lifting or repetitive bending. Dr. Dean opined that the cashier position would not be a problem if claimant was allowed to sit and move around and not just stand still.
Despite the defendant’s contention that the cashier position was within claimant’s physical work restrictions, the testimony demonstrated that at the time the job was offered, claimant would not have been able to sit periodically while working as recommended by Dr. Dean, because the defendant did not allow cashiers to sit and did not make a stool available for the claimant. In addition, the cashier job duties involved repetitive twisting, bending and reaching to pick up and scan items contrary to the physicians’ consistent light duty restrictions.
Based upon this record, we cannot say the WCJ was clearly wrong in concluding that the defendant failed to make available a suitable job within the claimant’s physical capabilities. Consequently, the WCJ did not err in awarding SEB to the claimant.
Alternatively, the defendant contends the WCJ erred in awarding SEB after the date of May 22, 2001. Defendant argues that any disability after that date resulted from a knee injury unrelated to claimant’s work accident. If an accident caused a disability from which a worker would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job-related accident. Fontenot v. Trans Gulf, Inc., 95-342 (La.App. 1st Cir.11/9/95), 664 So.2d 1238.
The record does not support the defendant’s assertion that Dr. Dean’s testimony shows that claimant’s back condition had resolved by May 2001. To the contrary, in an August 2001 report, Dr. Dean noted that claimant continued to experience low back pain with limited motion in her back and pain with straight leg raising on the left side. Dr. Dean testified that he maintained lifting and repetitive bending work restrictions based upon claimant’s back condition through August 2001. Dr. Dean also recommended a repeat lumbar MRI at that time.
Additionally, in March 2002, Dr. Ramos examined the claimant, who continued to complain of low back pain. Dr. Ramos noted a limited range of motion in the *1273 lumbar spine with a positive straight leg-raising test. Dr. Ramos also reported that claimant was making progress with physical therapy and recommended a functional capacity examination.
After reviewing the record, we cannot say the WCJ erred in awarding SEB to claimant for the period through August 21, 2002 and continuing in accordance with LSA-R.S. 23:1221(3). We note that the amount of SEB to be paid is subject to change in any month in which the employer shows that the claimant is earning or is able to earn wages. Baker v. Libbey Glass, Inc., 32,748 (La.App.2d Cir.5/10/00), 759 So.2d 1007. The assignments of error lack merit.

Forfeiture

Defendant contends the WCJ erred in finding that claimant did not forfeit her right to workers’ compensation benefits. Defendant argues that | ^claimant forfeited any benefits by willfully misrepresenting her work status.
LSA-R.S. 23:1208 provides that it is unlawful for any person to willfully make a false statement or representation for the purpose of obtaining or defeating any benefit or payment. An employee who violates this statute shall, upon determination by a workers’ compensation judge, forfeit any right to compensation benefits. LSA-R.S. 23:1208(E). The forfeiture of benefits will occur upon proof that (1) there was a false statement or representation (2) willfully made (3) for the purpose of obtaining any benefit or payment. Figueroa v. Hardtner Medical Center, 35,678 (La.App.2d Cir.1/25/02), 805 So.2d 1267. The statute providing for the forfeiture of workers’ compensation benefits is penal in nature and must be strictly construed. Smalley v. Integrity, Inc., 31,247 (La.App.2d Cir.12/9/98), 722 So.2d 332.
In the present case, McBride testified that claimant did not say she had been released for regular duty on January 5 and 7, 2001, as provided by the physician notes. McBride stated that on those dates, claimant had worked as a cashier, which was considered light duty. McBride testified that she had not seen all of the medical notes excusing claimant from work. However, McBride acknowledged that generally, claimant had provided her with such medical notes after each doctor visit.
The claimant testified that after getting treatment for her work injury, she attempted to return to work, but often could not complete her light duty shift because her continuing back pain prevented her from standing for the required length of time. Claimant stated that she gave McBride the | uphysicians’ written notes excusing her from work and restricting her job duties. Claimant testified that on the occasions when she left work early, she had sought medical treatment because of the doctors’ instructions to return if her back pain continued. Claimant explained that she did not try to work between January 10, 2001 and January 17, 2001, because she understood that Dr. Gardner had excused her from work until she saw an orthopedist. This testimony is supported by Dr. Gardner’s written work certificate referring claimant to an orthopedist and stating that claimant “will be able to return to work on The claimant gave this note to McBride, as reflected by the manager’s written notation on the work schedule.
The WCJ heard the conflicting testimony and weighed the credibility of the witnesses. The evidence presented supports a finding that claimant submitted the physicians’ notes to the store manager and thus provided defendant with notice of the extent and effective dates of the work restrictions. Consequently, we cannot say *1274 the WCJ was clearly wrong in finding that defendant failed to prove that the claimant willfully made false statements for the purpose of obtaining benefits. The assignment of error is without merit.

Average Weekly Wage

The defendant contends the WCJ erred in calculating the claimant’s average weekly wage (AWW). Defendant argues that the AWW should be based on claimant’s average earnings over the four weeks preceding the accident because she chose to work fewer than 40 hours per week.
11BIf the employee is paid on an hourly basis and is employed for 40 hours or more, the average weekly wage shall be determined as his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or by 40 hours, whichever is greater. LSA-R.S. 23:1021(10)(a)(i). If the worker is paid hourly and was offered employment for 40 hours but regularly, and at his own discretion, worked less than 40 hours per week, then the AWW shall be the average of his total earnings per week for the four full weeks preceding the accident. LSA-R.S. 23:1021(10)(a)(ii).
In the present case, McBride testified that claimant, as a full-time assistant manager, could have worked up to 40 hours per week, but often chose to work fewer hours. This testimony was supported by the work schedule, which indicated that claimant worked 40 hours in only one of the four weeks preceding her job accident.
In light of the average weekly wage rate stated in the judgment, the WCJ impliedly found that the claimant did not meet the requirement of Section 1021(10)(a)(i), but regularly chose to work less than the 40 hours available per week, and we cannot say that this finding is clearly wrong. However, the WCJ’s method of calculating the AWW set forth in the judgment is not readily apparent from our review of the record. Considering the average of claimant’s total earnings for the four weeks preceding the accident, ending on January 5, 2001 and December 29, 22, and 15, 2000, the average weekly wage is the amount of $222.53, with a compensation rate of $148.35 per week. We shall amend the judgment accordingly.
| Necessary Medical Treatment
The defendant argues that the WCJ erred in ordering that defendant pay for the claimant’s evaluation by a neurosurgeon because the claimant failed to prove that such treatment was medically necessary. A workers’ compensation claimant may recover medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related injury. Tatum v. St. Patrick’s Psychiatric Hosp., 32,616 (La.App.2d Cir.12/30/99), 748 So.2d 1276. The employee must prove by a reasonable preponderance of the evidence the necessity and relationship of the physician’s treatment to the work-related accident. LSA-R.S. 23:1203; Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140.
Here, the evidence showed that claimant sustained an injury to her lower back and continues to experience pain. She sought a neurological evaluation with Dr. Ramos for her recurring low back pain radiating to the left leg. Claimant related her symptoms to the work accident which had occurred approximately one year earlier.
In support of its position, defendant refers to Dr. Dean’s opinion that an evaluation of claimant by a neurosurgeon was not medically necessary. However, Dr. Dean’s deposition testimony indicates that he did not view such an evaluation as unreasonable, but believed that he was as capable of evaluating the claimant’s condition as was a neurosurgeon. In addition, Dr. Dean testified that he did not object to claimant *1275 having a medical evaluation by a neurosurgeon for a second opinion, but thought a better option was to obtain a repeat lumbar MRI, which he had requested in August 2001.
117Pespite Dr. Dean’s request, the defendant refused to approve a second MRI at the time. In the absence of this test, claimant subsequently sought a neurological evaluation when her pain symptoms did not resolve. Based upon this record, we cannot say the WCJ was clearly wrong in finding that claimant proved by a preponderance of evidence that the evaluation by Dr. Ramos was reasonably necessary to assess her medical condition. The assignment of error lacks merit.

Penalties and Attorney Fees

The defendant contends the WCJ erred in awarding claimant penalties and attorney fees. Defendant argues that such an award was not warranted because it had reasonably controverted the claim for compensation benefits.
The employer’s failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim. LSA-R.S. 23:1201(F); Baker v. Libbey Glass, Inc., 32,748 (La.App.2d Cir.5/10/00), 759 So.2d 1007. To reasonably controvert a claim, the employer must have sufficient factual or medical information to reasonably counter the evidence provided by claimant. Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers’ compensation benefits are penal in nature and must be strictly construed. Davis v. Jones Baldwin Music Co., 27,545 (La.App.2d Cir.11/1/95), 662 So.2d 803. The WCJ’s decision concerning whether or not to assess statutory penalties and attorney fees |iawill not be disturbed absent an abuse of discretion. Balsamo v. Jones, supra.
In the present case, contrary to defendant’s assertion in its brief, Dr. Gardner had noted objective signs of muscle spasms when he restricted claimant from any work with instructions for bed rest on the dates of January 6 and 9, 2001. Subsequently, in February 2001, Dr. Dean noted that claimant’s straight leg-raising test was positive for pain in her lower back. Based on the claimant’s symptoms, Dr. Dean restricted her from working until after an MRI of the lumbar spine was obtained to assess a possible disc injury. Defendant has not shown that it possessed sufficient factual or medical information at the time to reasonably counter the clinical findings of Dr. Gardner or Dr. Dean with regard to claimant’s disability.
In addition, the defendant refused to pay for the claimant’s evaluation with Dr. Ramos despite the WCJ’s prior order that defendant provide for such a neurological examination. Thus, defendant cannot demonstrate a reasonable basis for believing that it was not liable to pay this court-ordered medical expense. Based upon this record, we cannot say the WCJ abused her discretion in assessing penalties and attorney fees for defendant’s failure to pay indemnity and medical benefits. The assignment of error lacks merit.

Answer to the Appeal

The claimant contends the WCJ erred in awarding inadequate attorney fees of $2,000. Claimant argues that the award should be increased given the time and effort expended by her attorney in this case.
LSA-R.S. 23:1201(F) permits imposition of a reasonable attorney fee for the failure to pay compensation or medical *1276 benefits. The amount |19awarded rests within the discretion of the WCJ and that determination will not be disturbed absent an abuse of that discretion. McCarroll v. Airport Shuttle, Inc., 00-1123 (La.11/28/00), 773 So.2d 694; Ward v. Phoenix Operating Co., 31,656 (La.App.2d Cir.2/24/99), 729 So.2d 109. The factors to be considered in determining the amount of the attorney fee include the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee and the amount of time the attorney devoted to the case. McCarroll, supra; Ward, supra.
Here, the record shows that the claimant’s attorney conducted discovery, attended two depositions and filed a successful motion to require the defendant to approve the claimant’s second lumbar MRI and evaluation by Dr. Ramos. During the relatively brief trial, claimant’s attorney called one witness, cross examined the defendant’s witness and introduced into evidence a number of exhibits. The attorney succeeded in obtaining compensation benefits for claimant after devoting a reasonable amount of time to the case. After reviewing the record, we conclude that the attorney fee award of $2,000 is an abuse of discretion. We find that the amount of $4,000 is a reasonable award of attorney fees under the circumstances of this case. We shall amend the judgment accordingly.
The claimant contends the WCJ should have awarded separate penalties of $2,000 for defendant’s failure to pay indemnity and medical benefits. The judgment demonstrates that the WCJ considered defendant’s failure to pay compensation and medical benefits in assessing an aggregate penalty of $2,000. This determination was within the WCJ’s discretion and |?,nwe will not disturb the result.

Attorney Fees on Appeal

The claimant seeks additional attorney fees for work performed in connection with the appeal. An increase in attorney fees is usually awarded when the defendant appeals but is unsuccessful, and when the appeal has necessitated additional work on the part of claimant’s counsel. Caparotti v. Shreveport Pirates Football Club, 33,570 (La.App.2d Cir.8/23/00), 768 So.2d 186.
Here, although the calculation of the AWW has been amended, defendant’s appeal was otherwise unsuccessful. This appeal required additional preparation by claimant’s attorney, including submission of a brief and participation at oral argument. Consequently, we find that an increase in the award of attorney fees in the amount of $1,500 is reasonable in this case.
CONCLUSION
For the foregoing reasons, that part of the Office of Workers’ Compensation judgment specifying the claimant’s average weekly wage is amended and is hereby set at $222.53 for a weekly compensation rate of $148.35. The judgment is further amended to award an additional $3,500 in attorney fees for a total attorney fee award of $5,500. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to the defendant, Dollar General.
AMENDED AND AFFIRMED AS AMENDED.