844 So.2d 912 (2003)
Nicolas H. ISSA
v.
LL & G CONSTRUCTION, INC.
No. 2002 CA 1215.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
Rehearing Denied May 30, 2003.
*913 James L. Maughan, Baton Rouge, for Plaintiff/Appellant, Nicolas H. Issa.
Charles J. Duhe, Jr., B. Scott Cowart, Baton Rouge, for Defendant/Appellee, LL & G Construction, Inc.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
McCLENDON, J.
This appeal arises from a workers' compensation proceeding in which the plaintiff/appellant was granted some relief, though less than he sought. On appeal, we reverse and vacate the judgment.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Nicolas Issa, was involved in two accidents, while in the course and scope of his employment with LL & G Construction, Inc. ("LL & G"). The first accident occurred on September 13, 2000 and the second on October 24, 2000. Following the September accident, wherein Mr. Issa injured his back, he returned to work at light duty. Subsequently, in October, he was struck on the head by a "clod of dirt." Thereafter, Mr. Issa complained of worsened low back pain, neck pain, facial injuries, and an inability to breathe through his nose.
On December 19, 2000, when LL & G refused to authorize treatment for plaintiff by an ear, nose, and throat specialist, Mr. Issa filed a complaint with the Office of Workers' Compensation ("OWC"), seeking benefits for the October 24, 2000 accident and alleged injuries therefrom to his back, neck, and face. Thereafter, on April 30, 2001, Mr. Issa amended his petition to seek benefits for the September 13, 2000 accident, stating, "The claimant is unable to separate which injuries were caused by each accident and will rely upon health care providers for this information." Following a December 6, 2001 trial, judgment was rendered by the OWC judge, as follows:
1. The C[laimant] has proved by a preponderance of the evidence that an accident occurred in the course and scope of employment on September 11, 2000.
2. The Claimant has proved by a preponderance of the evidence that an accident occurred in the course and scope of employment on October 24, 2000.
3. Claimant has proved an inability to earn ninety percent of his pre-accident wages from October 24, 2000 to
*914 January 20[,] 2001. Supplemental earnings benefits are owed at the temporary total disability rate for this period of time.
4. Average weekly wage is determined to be [$]464.91 with a corresponding temporary total disability compensation rate of [$]310.10.
5. Medical expenses related to the lumbar and cervical complaints are to be paid by the defendant. Defendant is entitled to credit for any expenses already paid.
6. Medical expenses for the facial and oral problems are not related to the accident.
7. Claimant is found not to be disabled after January 20, 2001. No indemnity benefits are owed after January 20, 2001.
8. The claimant is found NOT to have violated La. R.S. 23:1208. The misrepresentations were not made for the purpose of obtaining benefits.
9. The claim for attorney fees and penalties is denied.
Mr. Issa appealed this judgment and on appeal urges the following assignments of error:
1. The [OWC judge] erred in failing to find that the Appellant was entitled to Supplemental Earnings Benefits after January 20, 2001.
2. The [OWC judge] erred in failing to find that the Appellant's nasal injuries were compensable.
3. The [OWC judge] erred in failing to award penalties and attorney's fees for the Appellee's arbitrary and capricious failure to pay benefits in accordance with the law.
LL & G filed an answer to the appeal, seeking reversal of the OWC judge's determinations. LL & G alleged the OWC erred in holding that plaintiff was entitled to supplemental earnings benefits, erred as to the amount of plaintiff's average weekly wage, and, erred in holding that plaintiff did not violate LSA-R.S. 23:1208.

LAW AND ANALYSIS
An employee who receives personal injury by accident arising out of and in the course of his employment shall be paid compensation, if not otherwise eliminated from by the workers' compensation provisions, by his employer in the amounts, on the conditions, and as designated by LSA-R.S. 23:1021 et seq. See LSA-R.S. 23:1031. "Accident" means an "unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." LSA-R.S. 23:1021(1).
The employee who claims a right to collect workers' compensation benefits has the burden of proving a work-related accident by a preponderance of the evidence. Bolton v. B E & K Construction, XXXX-XXXX, p. 8 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35; Catchot v. RAMCO Construction, XXXX-XXXX, pp. 2-3 (La.App. 1 Cir. 11/14/01), 818 So.2d 105, 107, citing Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992). Further, a claimant must establish a causal link between the work-related accident and his injury. Rhodes v. Terrebonne Parish Sheriff, 2001-2279, p. 3 (La.App. 1 Cir. 6/21/02), 822 So.2d 114, 116.
In the instant case, there was no dispute that plaintiff suffered two accidents in the course and scope of his employment with the defendant. The issue contested was the extent of plaintiff's disability and the causal connection between the accidents and the alleged injuries.
*915 The OWC judge found that Mr. Issa had established that he suffered a compensable injury and was unable to earn ninety percent of his pre-accident wages from October 24, 2000 until January 20, 2001, awarding supplemental earnings benefits at the temporary total disability rate. The oral reasons given by the OWC judge for this ruling were as follows:
Mr. Issa testified that he was injured in two separate accidents, one on September 11, 2000, and one October 24, 2000. Based on the testimony of Nicolas Issa, Pierre Issa, Tufic Issa, Henry Hage and Edward Levert there doesn't seem to be any real dispute to the fact that an accident occurred on September 11, 2000 in which Mr. Issa was pushing a rod and sustained an injury to his back. There also doesn't seem to be any dispute that an accident occurred on October 24th of 2000 where some dirt was inadvertently dropped on Mr. Issa's head resulting in increased back pain. The big question centers around Mr. Issa's ability to work.
Based on the medical records that I have and the testimony that was given at trial I don't think that there's any doubt that Mr. Issa was injured. He saw Dr. Davis, he saw Dr. Sweeney, he saw Dr. Nicholson, and he saw Dr. Horace Mitchell. At various times he was taken off work and put back on work by Dr. Davis and Dr. Sweeney. Dr. Nicholson had him completely disabled at some time and then released him to light duty. He eventually saw Dr. Horace Mitchell and Dr. Mitchell has released him to light duty.
The medical records are fairly clear as to the fact that Mr. Issa had sustained an injury to his back and that this injury resulted in his inability to return to the same type of work that he was doing which basically was heavy manual labor. The medical records also show that there's no doubt that Mr. Issa is capable of doing some type of work; light duty has been advised by two of the doctors, Dr. Nicholson and Dr. Horace Mitchell. There's no doubt in my mind that Mr. Issa is capable of returning to work in some capacity. The latest medical report from Dr. Mitchell state[d] that Mr. Issa was capable of returning to light duty. Dr. Nicholson also returned him to light duty in January of 2001, and Mr. Issa has not returned to work as of this time.
Based on the testimony that was taken and the medical records that were provided to me, Nicolas Issa has proven by [a] preponderance of the evidence that he was involved in two accidents while in the course and scope of his employment with LL & G Construction. These accidents resulted in a disability and that disability lasted until January 20th of 2001. At that time based on the medical records that have been provided to me and also based on the video tape that was shown, I find that Nicolas Issa was capable of engaging in gainful employment after January 20, 2001.
There was a lot of testimony about Mr. Issa's problem with the language barrier, but it's obvious from his medical records, the video tape that was shown and the testimony that was given that he is capable of doing some work. Based on the wage records that were provided to me after January 20, 2001, I don't think that Mr. Issa has proved an inability to earn 90% of his pre-accident wages. Before January 20th I think there was proof of that, but after that I don't think that there is. So therefore, I'm finding that Mr. Issa was disabled until January 20, 2001, and he's owed supplemental earnings benefits up until that time at the temporary total disability rate.

*916 The other question was what was the average weekly wage. I think based on the medical evidence and Mr. Issa's own testimony he could return to work after the September 11, 2000 accident and he in fact did return to work. He worked for a period of time and then after the October 24th accident he was disabled. Therefore, I think the correct way to calculate the average weekly wage is based on the four full weeks prior to the October 24, 2000 accident. I calculated those wages and came up with an average weekly wage of $464.91, and a corresponding temporary total disability rate of $310.10. So therefore, I'm finding that he's entitled to disability payments at the rate of $310.10.
The lumbar and cervical complaints, the medical expenses for those complaints are to be paid by the defendant. The defendant is entitled to a credit for any of those expenses which they have already paid. The medical expenses for the facial and oral problems I don't find are related to the accident. I don't think there's enough proof provided that the causes of these problems are in any way related to either the September 11, 2000 accident or the October 24, 2000 accident. So, therefore, I'm denying the claim for any medical expenses for the facial or oral problems.
There was also an allegation of fraud in that claimant has violated Louisiana Revised Statute 23:1208. While I do think there are certain questions regarding the credibility of Mr. Issa in this case, based on the video testimony that was shown to me, I don't think that it rises to the level of a 1208 violation; therefore I'm finding that there has been no violation of Louisiana Revised Statute 23:1208 and the claim for fraud is denied.
There was also a claim for attorney fees and penalties and I would say that that is somewhat wrapped up in the 1208 allegation; because while I don't find that a 1208 violation occurred, I do think there are some questions about Mr. Issa's credibility as regards his ability to work and not to work and what types of activities he has been engaged in.
I think that taken together with the medical evidence that has been provided where the doctors have returned him to work, he did return to work, they took him off work, put him back on work, gave him light duty, regular duty, that the situation is very confusing, but I don't think that there has been any arbitrary and capricious conduct in this case. I also think that the defendant has adequately made a good faith argument against benefits being owed and I think that they handled the file in a competent manner, therefore, I'm denying any claim for attorney fees and penalties.

CLAIM OF LSA-R.S. 23:1208 VIOLATION
In defense of Mr. Issa's claim for workers' compensation benefits, his employer urges that Mr. Issa has violated LSA-R.S. 23:1208, which provides, in pertinent part, as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

* * *
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation *917 judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E.Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter. [Emphasis added.]
Section 1208 is clear and unambiguous and as such will be applied as written. Resweber v. Haroil Construction Company, 94-2708, p. 7 (La.9/5/95), 660 So.2d 7, 12, citing LSA-C.C. art. 9, LSA-R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries. The legislature has imposed no notice requirement in Section 1208, apparently being of the opinion that any claimant should be on notice that false statements made willfully for the purpose of obtaining workers' compensation benefits will not be tolerated and will result in the forfeiture of those benefits. The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Company, 94-2708 at p. 7, 660 So.2d at 12.
In Resweber, the court noted that in enacting and amending LSA-R.S. 23:1208, the legislature made a policy decision that willful and deliberately false statements made specifically for the purpose of obtaining workers' compensation benefits are an attempt to defraud the workers' compensation system and should be dealt with harshly. Jim Walter Homes, Inc. v. Prine, XXXX-XXXX, p. 8 (La. App. 1 Cir. 2/15/02), 808 So.2d 818, 824. The court further recognized the legislature's continued effort over the years to make LSA-R.S. 23:1208 easier to enforce and to make its penalties stronger. It is clear from the specific language of the statute and the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits. Therefore, once it has been determined that a false statement or representation has been made, the workers' compensation judge must make a factual determination as to whether, based on the record, the statement or representation was willfully made "specifically to obtain benefits, and thus to defraud the workers' compensation system." Jim Walter Homes, Inc. v. Prine, XXXX-XXXX at p. 8, 808 So.2d at 824, citingSumrall v. Luhr Brothers, 95-0779, p. 5 (La.App. 1 Cir. 12/15/95), 665 So.2d 796, 799, writ denied, 96-0187 (La.3/15/96), 669 So.2d 425.
In the instant case, numerous allegations of false statements on the part of the claimant were alleged. Only two were borne out by the record before the OWC.
The first involves Mr. Issa's ability to work. During discovery and at trial, Mr. Issa was asked whether he had performed any work since his alleged injuries at LL & G; he stated that he had not. However, LL & G produced at trial a private investigator who had video-taped Mr. Issa arriving at his brothers' Texaco station on September 12, 2001, at approximately 9:51 a.m. and remaining there until at least 2:37 p.m., when surveillance was *918 discontinued. The investigator reported that he went inside the store and observed through binoculars from outside the store that Mr. Issa was using the cash register and waiting on customers. Further, the video tape showed Mr. Issa going outside the business to check the level of gas in the underground storage tanks, using a long pole. The investigator testified and the video tape showed that Mr. Issa did not appear to be in any apparent pain or distress in performing these activities. This testimony and demonstrative evidence was in direct conflict with the testimony of Mr. Issa and his brothers that Mr. Issa never worked at the station and only visited there, but never for more than forty-five minutes at a time.
The second misrepresentation evident from the record was the claim by Mr. Issa that certain facial injuries were caused by the October 24, 2000 accident and were therefore compensable. On December 7, 2000, Mr. Issa was examined by Dr. John P. Sweeney, an orthopedist who had been consulted previously concerning Mr. Issa's back complaints. On that date, Mr. Issa related the October 24, 2000 accident and pointed out areas, which Dr. Sweeney described as: "[a] fresh contusion with a small lump there that was movable...[,] a bruise beneath his right eye ...[,] that his neck was swollen ...[,] his nose was swollen and painful ... [, and] to an area on the right side of his gum, over the right lateral incisor that he says was injured at the time of the accident." Dr. Sweeney was adamant that the injuries complained of were not four to five weeks old, but rather were fresh and could not have been the result of the October 24th accident.
Dr. Sweeney's conclusion is supported by the absence of recordation of any such complaint or finding by earlier medical providers.
The October 24, 2000 report from Lakewood Medical Center in Morgan City stated that Mr. Issa's chief complaint was back pain; no notes were made under the ENT, neck, or respiratory sections of the report. Further, the report made no notation of any injury to Mr. Issa's face.
Dr. Robert W. Davis saw Mr. Issa on October 25, 2000 and testified that on that date he recorded in his notes the following observations:
[T]he head and neck region had no sign of external trauma. I used the word "atraumatic." I also clarified that by saying that there was no abrasions, bruising, erythema, or swelling.
Dr. Davis specifically stated that he examined Mr. Issa's head and face and that he would have recorded any abnormality, had he observed any.
Mr. Issa was next examined on November 8 and 29, 2000 by Dr. Robert J. Nicholson, claimant's orthopedic physician of choice. Although Mr. Issa sought treatment from Dr. Nicholson for his back complaints, Mr. Issa reported that in the October 24th accident he had also injured his nose. Dr. Nicholson testified that he examined Mr. Issa's facial area and found no gross deformity. When Dr. Nicholson was questioned about Dr. Sweeney's subsequent physical findings on December 7, 2000, Dr. Nicholson specifically denied having seen any of those injuries on his examination of Mr. Issa's face and stated that he would have noted any bruises, lacerations, or swellings, had any been present.
Despite the absence of any medical documentation of facial injuries between October 24, 2000 and November 29, 2000 and the categorical denial by the medical providers consulted during this time frame that any facial injuries were evident on their examination(s) of Mr. Issa, Mr. Issa maintained at trial that the facial injuries *919 complained of resulted from the October 24th accident and all appeared within days of the accident.
The reasons for judgment of the OWC judge reveal that he did not find the facial injuries at issue to have been related to the October 24th accident. In so finding, though not directly stated, the OWC judge had to have rejected the credibility of Mr. Issa on this point. Further, the OWC judge stated that the credibility of Mr. Issa was brought into question by the video tape presented by LL & G. Yet, the OWC judge stated, "I don't think that it rises to the level of a 1208 violation." In so concluding, we find legal error.
In both instances of misrepresentation, the three-prong Resweber criteria were met: (1) a false statement or representation was made (Mr. Issa stated he could not and had not worked since his injuries, when on at least one occasion he worked in excess of five hours at his brothers' Texaco shop, and Mr. Issa stated that he suffered serious facial injuries that Dr. Sweeney described as looking as if he had been beaten up, yet these injuries were not present during examinations by the three medical providers who saw Mr. Issa before Dr. Sweeney's December 7th examination); (2) it is willfully made (Mr. Issa's statements on these points were continuously maintained and voluntary); and, (3) it is made for the purpose of obtaining or defeating any benefit or payment (Mr. Issa's statements could have been made for no other reason than to obtain benefits for the injuries and he in fact sought such benefits before the OWC).
Even though Mr. Issa may have had an otherwise valid claim for workers' compensation benefits for his lower back, LSA-R.S. 23:1208(E) requires forfeiture of this right when misrepresentations have been made. Therefore, we conclude the OWC judge erred in failing to find that these misrepresentations constituted a violation of LSA-R.S. 23:1208, requiring forfeiture of workers' compensation benefits.
Having disposed of the appeal on this basis, we pretermit the remaining assignments of error.

CONCLUSION
For the reasons assigned herein, the judgment of the Office of Workers' Compensation is reversed and vacated, and the claims of Nicolas H. Issa are hereby dismissed. All costs of this proceeding are to be borne by Mr. Issa.
REVERSED AND VACATED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.