874 So.2d 407 (2004)
Dino DISTEFANO
v.
B & P CONSTRUCTION, INC.
No. 04-CA-25.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
Rehearing Denied June 15, 2004.
*409 Christopher R. Schwartz, Metairie, LA, for Plaintiff/Appellant.
Deanne B. McCauley, John J. Rabalais, Janice B. Unland, Robert T. Lorio, Covington, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
The claimant, Dino Distefano, appeals the judgment of the trial court that found he forfeited workers' compensation benefits for violating LSA-R.S. 23:1208. For the reasons stated herein, we affirm the trial court's judgment.
STATEMENT OF THE CASE
Dino Distefano filed a Disputed Claim for Compensation on December 3, 2001, *410 for injuries that he suffered on September 19, 2001 when he was struck in his left thigh by a large piece of a steel beam while in the course and scope of his employment with the defendant, B & P Construction, Inc. ("B & P"). On July 1, 2002, after Distefano's deposition and video surveillance had been taken, B & P filed a Reconventional Demand, alleging that Distefano violated LSA-R.S. 23:1208 by willfully making false statements in his deposition of March 5, 2002 regarding the extent of his disabilities and physical restrictions.
In its Reconventional Demand, B & P alleged that Distefano specifically stated in his deposition that he was essentially restricted to staying on the sofa with an ice pack and his leg elevated, he was incapable of walking inside or outside his home without a walker, and that he was unable to squat, kneel, or bend his left leg. B & P engaged a private investigator who videotaped Distefano on several dates both before and after the deposition. Based upon the surveillance videos, B & P determined that Distefano misrepresented the severity of his condition and misrepresented the activities of which he was capable. Although B & P had begun paying worker's compensation benefits after the accident, based upon Distefano's deposition and the video surveillance, B & P terminated his benefits as of August 2002.
Trial was held on July 14, 2003. The only witnesses to testify at trial were Mr. Distefano and Mr. Musgrove, the private investigator who conducted the video surveillance. Many exhibits were admitted, including Distefano's medical records, several depositions, photographs of Distefano's leg, and surveillance videotapes.
On October 27, 2003, the trial court issued a judgment in favor of B & P Construction, Inc., finding that Distefano was not a credible witness and that he had willfully made false statements in an attempt to receive workers' compensation benefits in violation of LSA-R.S. 23:1208. The trial judge dismissed Mr. Distefano's claim with prejudice and cast him with all costs. Further, the judgment referred the matter to the Fraud Division of the Louisiana Office of Workers' Compensation Administration. It is from this judgment that Distefano appeals.
DISCUSSION
Before we discuss Distefano's assignments of error, we must consider a motion filed by B & P after Distefano's appeal was lodged. The defendant, B & P Construction, Inc., filed a Motion to Dismiss Appeal and/or Alternative Motion to Strike Evidence and Argument of Appellant. This motion was based on Distefano's inclusion in his appellate brief of documents and facts outside of the trial court record, specifically relating to medical treatment he allegedly received after the trial of this matter, and also the ruling from the Fraud Division's investigation of this matter. A panel of this court denied the Motion to Dismiss and referred the Alternative Motion to Strike to the panel assigned to hear the merits of the case.
B & P argues that any medical treatment Distefano received after the trial is not relevant to the primary issue at trial, which was whether he made false statements in his March 5, 2002 deposition in violation of LSA-R.S. 23:1208. Further, B & P argues that correspondence from the Fraud Division should not have been attached to Distefano's appeal, because it is this Court's duty to review only the testimony and evidence presented at trial, and any documents or correspondence prepared after trial is irrelevant. Distefano responds that the decision of the Fraud Division should be included in the record for completeness, as should the information about his subsequent medical treatment.
*411 Attaching documents not admitted into evidence at trial to an appellate brief does not supplement the record. The proper procedure to seek supplementation of the record is to file a Motion to Supplement the Record, which was not done in this case. Moreover, there is no evidence regarding Mr. Distefano's medical treatment subsequent to trial, but only counsel's statements in brief, which are not evidence. This information is not relevant to the instant dispute. Furthermore, allowing any medical information into the record at this point would prejudice B & P, because it was not given the opportunity to question any doctors or determine any facts surrounding Distefano's post-trial medical treatment.
LSA-C.C.P. art. 2164 provides that an appellate court must render its judgment upon the record on appeal. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments, and other rulings, unless otherwise designated. LSA-C.C.P. arts. 2127 and 2128; Board of Directors of Industrial Development Bd. of City of New Orleans v. Taxpayers, Property Owners, Citizens of City of New Orleans, 03-0827 (La.App. 4 Cir. 5/29/03), 848 So.2d 733, 737, writ denied, 03-1528 and 03-1843 (La.10/1/03), 855 So.2d 288, 289; Augustus v. St. Mary Parish School Board, 95-2498 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1156. The appellate briefs of parties and attachments thereto are not a part of the record on appeal, and this court has no authority to consider on appeal facts referred to therein if those facts are not in the record. Reed v. Peoples State Bank of Many, 36,531 (La.App. 2 Cir. 3/5/03), 839 So.2d 955, 958. Examination of exhibits attached to an appellate brief, but not offered into evidence, is beyond the scope of our review. United General Title Insurance Co. v. Casey Title, Ltd., 01-600 (La.App. 5 Cir. 10/30/01), 800 So.2d 1061, 1065.
Considering the jurisprudence on this issue, we find that Distefano's references to his post-trial medical treatment and the attachment of correspondence from the Fraud Division were improper and may not be considered by this Court on appeal. Accordingly, we grant B & P's Motion to Strike Evidence and Argument.
We now address the merits of Distefano's appeal, in which he has assigned the following errors:
1. The hearing officer committed manifest error or was clearly wrong in holding that Dino Distefano did not suffer the injuries that he testified he suffered.
2. The hearing officer committed legal error or was clearly wrong in applying LSA-R.S. 23:1208 in the present matter, in ordering Dino Distefano to pay all cost [sic] of the proceedings, and in dismissing this matter with prejudice.
3. Dino Distefano is entitled to attorney fees and penalties because his employer unreasonably denied him workers' compensation benefits, and Dino Distefano is entitled to future workers' compensation benefits.
4. The hearing officer committed legal error or was clearly wrong in failing to allow the report of the employer's medical expert, Dr. Ira Markowitz, into evidence because the employer refused to pay Dr. Markowitz to review the video tapes entered by the employer to allege fraud on behalf of Dino Distefano.
The first two assignments of error are related and concern the applicability of LSA R.S. 23:1208, which states in pertinent part:

*412 A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
LSA-R.S. 23:1208, which provides for the forfeiture of worker's compensation benefits, is penal in nature and must be strictly construed. Frazier v. Dollar General, 37,298 (La.App. 2 Cir. 8/22/03), 852 So.2d 1263, 1273. The only requirements for forfeiture under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Lee v. Alton Ochsner Medical Foundation, 01-650 (La.App. 5 Cir. 10/17/01), 798 So.2d 1225, 1229, writ denied, 01-3094 (La.2/1/02), 807 So.2d 853, reconsideration denied, 01-3094 (La.3/22/02), 811 So.2d 935. Once these requirements are met, the statutory forfeiture provisions apply and must be enforced. Meyer v. Carr Stone & Tile Co., 01-1422 (La.App. 4 Cir. 3/13/02), 813 So.2d 529, 531.
LSA-R.S. 23:1208 is a broadly worded statute encompassing any false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits, and this statute contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. J.E. Merit Constructors, Inc. v. Butler, 97-361 (La.App. 5 Cir. 9/30/97), 700 So.2d 1111, 1113; Hull v. Fluker Farms, 00-0757 (La.App. 1 Cir. 5/11/01), 787 So.2d 535, 539, writ denied, 01-2291 (La.11/16/01), 802 So.2d 612.
The determination of whether or not a worker's compensation claimant has forfeited his right to benefits by making a false statement or representation for the purpose of obtaining benefits involves inherently factual determinations and, thus appellate review of the worker's compensation judge's findings is governed by the manifest error standard. Rowan Companies, Inc. v. Powell, 02-1894 (La.App. 1 Cir. 7/2/03), 858 So.2d 676, 680, writ denied, 03-2177 (La.11/14/03), 858 So.2d 425. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. Salard v. Diamond M Tile & Marble, Inc., 01-373 (La.App. 3 Cir. 12/12/01), 801 So.2d 1230, 1233, writ denied, 02-450 (La.4/19/02), 813 So.2d 1091.
In these two assignments of error, Distefano argues that he did not make willful misrepresentations in order to obtain any benefit. He asserts that the defendant is trying to punish him for being ambulant with a cane rather than a walker, and that none of the surveillance tapes show him engaged in activities that contradict the statements he made in his deposition regarding his physical capabilities. Distefano argues that if the video shows him using a cane instead of a walker, it was his attempt to exercise his left leg as much as possible, which was the point of his physical therapy. He contends that the videos only show him taking care of normal errands with the use of a cane, which does not contradict his deposition testimony. We disagree.
*413 In support of its position that Distefano made false representations in order to receive benefits, B & P points to specific statements Distefano made in his March 5, 2002 deposition. We note that this deposition occurred approximately five and a half months after Distefano's injury. Distefano stated that the extent of his physical activity around the house was staying on the sofa with his leg elevated with an ice pack to reduce the swelling. He claimed that he was basically restricted to the house, and the most he did was go to the carport to smoke and then "pop right back in the house." He stated that he had to use the walker to go outside of his house to the carport to smoke. He indicated that he used the walker inside his home also, and that he had to use the walker everywhere he went. Distefano also stated in his deposition that he was unable to bend to the left side or bend his left leg.
B & P conducted video surveillance of Distefano on February 6, 7, and 11, 2002, and on June 28 and July 2, 2002. This video surveillance clearly contradicts Distefano's deposition testimony as to his functional level and physical capabilities, as it shows that Distefano did not use the walker everywhere he went, he could bend his left leg, he was not restricted to the inside of his house, and he could walk easily with the use of a cane rather than a walker.
The first video surveillance tape, taken on February 6, 2002, shows Distefano walking outside at a normal pace with the assistance of a cane, not a walker, and then getting into the driver's seat of his Ford Explorer and driving away. Video surveillance taken the next day, February 7, 2002, shows Distefano getting into the driver's seat of his vehicle with apparent ease and then driving with his guest passenger and common-law wife, Jonell Paysee, to his doctor's office. Although he walked from his home to his vehicle without a walker or any apparent difficulty, when he arrived at the doctor's office, he used the walker and slowly walked inside.
On February 11, 2002, video surveillance shows Distefano arriving at his home, exiting his vehicle, and then carrying a grocery bag across the street without using his walker. Then, he walked back to his home with the use of his cane and without apparent difficulty. Shortly thereafter, he is observed walking to his vehicle with a cane, while carrying his walker, and then loading the walker into the backseat. He then got into the front passenger's seat and Ms. Paysee drove them away. A short time later, he arrived at his doctor's office, where he used the walker and approached the building in a very slow manner. There was only 15-20 minutes between the time he easily walked to his vehicle at home while carrying his walker until he arrived at the doctor's clinic and used the walker to move very slowly into the building. When he left the doctor's office, he once again moved slowly to his vehicle using the walker. Although he carried the walker and loaded it into the vehicle at his house, Ms. Paysee loaded the walker into the vehicle at the doctor's office. Less than 30 minutes later, Distefano was observed driving to Tu's Tire and he used his cane without difficulty when he arrived. While at Tu's Tire, he walked around the vehicle and watched while his vehicle was being repaired. He also bent his left leg without any apparent difficulty and squatted while examining and pulling on his right rear axle. Then, he arose from this squatting position without using a cane, walker, or any other assistance.
Video surveillance taken on June 28, 2002, shows Distefano again walking outside and around his vehicle without the use of a walker, and also bending over and *414 shaking ice into an ice chest. However, on July 2, 2002, when he arrived at his doctor's office, he again used a walker and walked very slowly into the building. During all of the video surveillance, on the occasions when Distefano used the cane, he appears to walk easier and faster than when he used the walker. However, during trial, he stated that it was easier to walk with a walker than a cane.
James Musgrove, a private investigator, testified at trial that that he conducted the video surveillance of Distefano. He authenticated the videotapes admitted at trial and also testified about Distefano's activities that he observed and videotaped.
At trial, Distefano admitted that he is the person shown on the videotapes. He stated that he uses a walker and sometimes a wheelchair to get around. He indicated that could not walk a distance of one block down the street. He further testified that he cannot bend his left leg. He stated that he testified as he did in his deposition because he was taking medication and got confused. However, he did not present any evidence to support his testimony that he was on medication and he did not mention medication in his affidavit in opposition to B & P's Motion for Summary Judgment. Rather, in his affidavit, he stated that he did not make any willful misrepresentations in order to obtain benefits but had experienced "momentary forgetfulness" during his deposition. In his appeal brief, Distefano suggested another reason for his activities on the videos. He stated that his doctors recommended that he exercise the leg as much as he could, and the activity on the videotapes could have been an effort to do that.
In her deposition, Jonell Paysee testified that she had not seen Distefano doing anything strenuous since the accident and that he was even unable to unload groceries from the car. However, she admitted that she had not viewed the video surveillance and did not accompany Distefano to Tu's Tire where he bent his left leg and squatted by his vehicle. She also testified about an incident when she was pushing Distefano in a wheelchair and came up too fast on a curb, throwing him at least 10-15 feet.
In his deposition, Distefano stated that at the time of his accident, he had worked for B & P Construction for approximately 10-11 years as a manual laborer. The accident happened while working alongside his supervisor, who took him to the hospital after the accident. His wound was initially treated at the emergency room and he was released, but swelling and infection occurred within the next day, whereupon he returned to the hospital and was admitted for approximately two weeks. He stated that he participated in some physical therapy but had to stop, because one of his doctors indicated that he was getting a blood clot. However, two tests for deep vein thrombosis, performed in October of 2001 and March of 2002, were negative. Distefano stated that his main treating physician at the time of the deposition was Dr. Kenneth Williams, who had told him he was unable to return to work at that time and prescribed the walker for him. At trial, Distefano stated that his leg was bruised and had leakage. However, photos taken one week prior to trial do not reveal much bruising or any leakage.
The parties do not dispute that Distefano suffered an injury to his left leg during this accident, and his medical records document that he suffered an injury, which caused him decreased circulation, swelling, and numbness in his left leg. However, based on the video surveillance, B & P argues that Distefano's injuries were not as restrictive and debilitating as he has claimed.
*415 It is clear and evident that Distefano did indeed make false representations about his physical abilities during his deposition. He claimed in his deposition that he had to use his walker to go everywhere and that he could not bend his left leg. However, the video surveillance indicates that he did not accurately state his condition during the deposition, because the videos show him walking at a normal pace without the use of a walker on several occasions and even bending and squatting and then standing up without any assistance. We further note that Distefano's movements outside his home appear to be done with ease without a walker and at a normal pace, whereas his movements outside the doctor's office were slower and with the assistance of a walker.
Once it has been determined that a false statement or representation has been made, the trial judge must make a factual determination as to whether, based on the record, the statement or representation was willfully made in order to obtain benefits. Issa v. LL&G Construction, Inc., 02-1215 (La.App. 1 Cir. 3/28/03), 844 So.2d 912, 917, writ denied, 03-1875 (La.10/31/03), 857 So.2d 480. In the present case, the trial court considered the evidence and made the factual determination that Distefano was not credible and had indeed made willfully false representations in order to obtain benefits. In light of the evidence, this finding was reasonable.
Although the medical records indicate that Distefano did suffer an injury to his left leg as a result of the accident, the videotapes show that he did not accurately testify regarding the severity of his condition and physical abilities. It is difficult for this Court to assess the true condition of a claimant when he has been dishonest and has falsely represented his physical limitations. LSA-R.S. 23:1208, which requires a worker to forfeit workers' compensation benefits for willfully making a false statement or misrepresentation to obtain benefits, is rationally related to the state's objective of promoting honest representations and full disclosure by workers' compensation claimants. Bolton v. Mike Fleming Const., 36,521 (La.App. 2 Cir. 12/11/02), 833 So.2d 1177, 1184. The evidence supports the trial court's finding that Distefano did not make honest representations or fully disclose his physical abilities. Such conduct by the claimant is disfavored and should not be condoned by this Court.
An appellate court is duty bound to affirm a determination that a claimant has forfeited his entitlement to worker's compensation benefits on the basis of fraudulent misrepresentation, where an evidentiary basis exists to support such a conclusion. Dukes v. Sherwood Acres Apartments, 01-2325 (La.App. 1 Cir. 11/8/02), 835 So.2d 742, 747. The record before us shows that there is in fact an evidentiary basis for the trial court's finding that Distefano made false representations in order to obtain benefits, and this Court must affirm the factfinder's conclusion when it is reasonable.
Considering the testimony and evidence, we find the trial judge's conclusion that Distefano's statements at his deposition were willfully false for the purposes of forfeiture under R.S. 23:1208 was not manifestly erroneous. Accordingly, we affirm the trial court's judgment dismissing Distefano's disputed claim for compensation with prejudice and casting him with all costs of the proceedings.
In his third assignment of error, Distefano argues that he is entitled to statutory penalties and attorneys fees, because B & P was arbitrary and capricious in discontinuing his benefits.
*416 At the time that B & P discontinued benefits to Distefano, this matter was governed by LSA-R.S. 23:1201.2, which stated:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to payment of all reasonable attorney fees for the prosecution and collection of such claims.
"Arbitrary and capricious behavior," within the meaning of the worker's compensation statute providing for the imposition of attorney fees, consists of willful and unreasoning action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 45-46. At the time that Distefano's benefits were terminated, LSA-R.S. 23:1201.2 provided for an award of attorney fees, but not penalties, for arbitrary or capricious discontinuation of benefits.
Considering the totality of the facts in this case and in view of our finding that the trial judge was not manifestly erroneous when he found that Distefano forfeited his right to worker's compensation benefits, we find that B & P was not arbitrary, capricious, or without probable cause, when it terminated Distefano's benefits. Accordingly, Distefano is not entitled to recover attorney fees or penalties, and this assignment of error is without merit.
In his fourth and final assignment of error, Distefano argues that the trial court erred in disallowing the admission of a report by Dr. Ira Markowitz, the defendant's IME doctor. The trial judge found that Dr. Markowitz's medical report was inadmissible, because it was unreliable and unauthenticated hearsay.
The report, approximately a page and a half in length, is not on letterhead and is not signed, and the author is simply identified as "I.M." We agree with B & P that the report was not properly authenticated. Moreover, although Distefano contends that Naquin reviewed Dr. Markowitz's reports before deciding to terminate his benefits, according to Naquin's deposition, he did not review any other records from Dr. Markowitz, who refused to furnish B & P with records of the examination or to view the video surveillance tapes until certain fees were paid. It is also clear from Naquin's deposition that he did not consider medical records in making his recommendation to terminate benefits, but only Distefano's deposition and the video tapes, which he stated in his deposition that he did view. Considering the testimony, evidence, and arguments of counsel, we find no error in the trial court's ruling not to allow admission of this exhibit.
DECREE
Accordingly, for the reasons assigned above, we affirm the judgment of the trial court. We also grant B & P's Motion to Strike Evidence and Argument.
AFFIRMED.
DALEY, J., dissents with reasons.
DALEY, J., Dissenting with reasons.
I respectfully dissent from the majority's opinion. I believe the facts in the record, when considered as a whole, shows Dino Distefano's statements were not willfully falsely made with the intention of fraudulently receiving benefits. I find the trial judge's conclusion that Distefano's statements at his deposition were willfully false for the purposes of forfeiture under R.S. 23:1208 to be manifestly erroneous. While it appears his statements may have overstated his physical disabilities, the variance *417 between Distefano's testimony as to the things that he could do and those activities shown on the videotapes is not the type of fraud envisioned by LSA-.R.S. 23:1208. See Palmer v. Schooner Petroleum Services, 02-397 (La.App. 3 Cir. 12/27/02), 834 So.2d 642
R.S. 23:1208 does not require that the trier of fact look at the allegedly false statements in a vacuum. The insurance adjustor, Joseph Naquin, who made the decision to terminate Distefano's benefits, admitted in his deposition that he considered only the deposition and the videotapes, and no other factors or records. When I look at the entire record, and consider all the facts, especially the medical records that document Distefano's objective injuries, the fact that Distefano was under active medical care at all times and had not been released to return to work, I conclude that Distefano's statements in deposition did not rise to a violation of R.S. 23:1208. I would reverse and remand to the Office of Workers' Compensation reinstatement of benefits.
B & P conducted video surveillance on Distefano on February 6 and 7, 2002, and on June 28 and July 7, 2002. B & P argues that the videos show him walking "briskly" with a cane instead of a walker, and that one video shows him bending his left leg as he examines the tire of his car. The video surveillance tape shows Distefano walking with a cane across his street carrying a small plastic grocery bag, ostensibly to his parents' home. Another video shows him bending his left leg to examine the tire of his car while at a tire shop. Another video shows him using the walker while going to and from his doctor's office. Video also shows Distefano, on these same dates, driving a Ford Explorer. On the occasions when Distefano used the cane, he appears to walk somewhat easier and faster than when he used the walker, though he is never without a limp.
It is clear that Distefano exhibited disability in his leg on every video. He never walked unaided, though he did use a cane instead of a walker in certain instances. He walked with a limp in every video. He was never shown engaged in any strenuous physical activity. Though it is true he stated in deposition that he could not bend his left leg, the video shows him bending his left leg on one occasion for a short period of time. It does not show him engaged in repeated bending, and Distefano walked with a cane in that particular video sequence. Distefano said that his doctors recommended that he exercise the leg as much as he could, and that this activity was merely an effort to do that.
At his deposition, Distefano stated that he was 39 at the time of his accident. He had not completed the 10th grade in high school, and had worked a series of manual labor jobs since leaving high school. He lived in a house his parents owned across the street from his parents with his girlfriend and their two children. At the time of his accident, he had worked for B & P Construction for approximately 10-11 years as a manual laborer. He operated a bobcat and pile driver, and performed whatever other manual labor was necessary. His accident happened while working alongside his supervisor, who was also the one who took him to the hospital. His wound was initially treated at the emergency room and he was released, but swelling and infection occurred within the next day, whereupon Distefano returned to the hospital and was admitted for approximately two weeks while the wound was treated surgically and drained. He stated that he participated in some physical therapy but had to stop when it made the swelling in his leg worse.
*418 Distefano stated that he had never been involved in any previous workers' compensation claim or lawsuit, nor had he ever filed any lawsuit for personal injury. He denied any previous medical history with his left leg, no motor vehicle accidents, and no slip and falls. No medical records contradict these assertions.
At the time of his deposition, when the allegedly fraudulent statements were made, Distefano was only approximately six months post-injury and remained under the active care of several doctors. His medical records document that he suffered from a serious condition, vascular insufficiency in his left leg caused by the accident, which caused him decreased circulation, chronic swelling, and pain and numbness in his left leg. An MRI taken a few months after the injury suggested that scar tissue affected the saphenous vein, causing the swelling and vascular insufficiency. Distefano stated that his main treating physician at the time of the deposition was Dr. Kenneth Williams, who had told him he was unable to return to work at that time. Dr. Williams prescribed the walker for Distefano and also provided the medical documentation for him to secure a handicapped license plate for his car.
In the same deposition, Distefano said that whereas he didn't think he could return to the same type of work that he had performed for B & P, he thought he could return to work if it didn't involve standing on his left leg. Distefano was under the impression that he had suffered from blood clots in his leg, but two tests for deep vein thrombosis, performed in October of 2001 and March of 2002, were negative. At the time of the deposition, it does not appear that any doctor had as yet stated that Distefano had reached maximum medical improvement, nor had any doctor released him to return to work, nor had they offered opinions on his future capabilities.
Several medical records dated after the termination of benefits, but before trial, suggest that Distefano had been told that above the knee amputation was the only other surgical intervention that doctors could offer. Some records indicate that he was requesting amputation. It is unclear whether this recommendation was for alleviation of the pain or swelling. The record does not reflect that Distefano had been offered any rehabilitation services nor undergone a functional capacity examination to determine the extent of his disability. Other medical records dated after the termination of benefits, but prior to trial, show that Distefano continued to seek treatment for pain, tenderness, and periodic swelling of his leg.
Considering all the evidence as noted above, I conclude that the trial judge was manifestly erroneous in finding that Distefano's deposition testimony rose to the level of fraud contemplated by R.S. 23:1208.