# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2023 CA 0966

## BRETT AUTTONBERRY

### VERSUS

## COX COMMUNICATIONS, INC., EUGENE DAVIS AND USAA PROPERTY AND CASUALTY

*Judgment Rendered:* OCT 2 9 2024

********

Appealed from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C691240

The Honorable Timothy E. Kelley, Judge Presiding

********

| | |
|---|---|
| Lauren E. Cavalier<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant<br>Brett Auttonberry |
| Matthew C. Nodier<br>Amanda E. McGowen<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>Cox Communications & Eugene Davis |

********

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

Chutz, J., Concurs.

**LANIER, J.**

The plaintiff-appellant, Brett Auttonberry, appeals the judgment of the Nineteenth Judicial District Court based on the unanimous jury verdict following a trial on the merits. For the reasons set forth herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

On or about August 31, 2019, Mr. Auttonberry was driving his personal vehicle on Highway 64 in Zachary, Louisiana as he approached an intersection with a traffic light. Highway 64 contains a left turn lane, two straight travel lanes, and a right turn lane at this intersection. The defendant, Eugene Davis, was travelling in the same direction as Mr. Auttonberry in a vehicle owned by Cox Communications, Inc. (Cox). Mr. Davis was acting in the course and scope of his employment with Cox at the time.

Mr. Auttonberry alleged that as he approached the intersection in the right travel lane, he saw the lane was congested and moved to the left travel lane. Mr. Auttonberry alleged he prepared to stop at the intersection, when the traffic light turned green. As he proceeded through the intersection, Mr. Davis, who was in the left turn lane, merged into the left travel lane where Mr. Auttonberry was driving and collided into the left front of Mr. Auttonberry's vehicle. Mr. Auttonberry claimed the accident caused damage to himself and his vehicle.

According to Mr. Davis, he approached the intersection in the left travel lane with no vehicles in front of him, and as he was about to pass by Mr. Auttonberry, Mr. Auttonberry attempted to merge into the left travel lane. The right rear of Mr. Davis's vehicle came into contact with the left front of Mr. Auttonberry's vehicle.

Officer Michael Rispone of the Zachary Police Department responded to the scene of the accident and took the statements of both drivers. He did not issue traffic citations to either driver.

2

On November 26, 2019, Mr. Auttonberry filed a petition for damages, in which he claimed to have been injured in a car accident by Mr. Davis, who was operating a vehicle owned by Cox and was acting in his course and scope of employment with Cox at the time of the accident. Mr. Auttonberry also alleged that at the time of the accident, Cox and Mr. Davis were insured, but did not name the insurer. Mr. Auttonberry also claimed that he was insured by USAA Property and Casualty (USAA)[1], and named USAA as a defendant.

The case proceeded to a jury trial on the merits. The jury unanimously found that Mr. Davis was not at fault in the accident and awarded Mr. Auttonberry no damages. On August 29, 2022, the district court signed a judgment in conformity with the jury's verdict and dismissed Mr. Auttonberry's claims against Cox and Mr. Davis with prejudice.[2] Mr. Auttonberry has appealed this judgment.

## ASSIGNMENTS OF ERROR

Mr. Auttonberry makes four assignments of error:

1. An unidentified witness's statement from Ofr. Rispone's body camera footage was improperly excluded from evidence.

2. The live testimony of a hired investigator for surveillance and a Louisiana State Trooper, who did not investigate the accident, was improper. The testimony had no relevance to the subject matter at hand and was admitted as impeachment evidence, when Mr. Auttonberry had not testified to anything that he could have been impeached on, and was introduced to prove that Mr. Auttonberry had the propensity to switch lanes in traffic and drive above the speed limit. This "propensity evidence" is in direct violation of La. C.E. art. 608(B).

3. Surveillance footage regarding Mr. Auttonberry's injuries was admitted against his objection and was not proper impeachment.

4. Jurors who couldn't commit to a fair an impartial trial were improperly selected.

## DISCUSSION

---

[1] Mr. Auttonberry later stated in a motion to dismiss his claims against USAA without prejudice that he had incorrectly named USAA in his petition for damages, and that the insurer's correct name was USAA General Indemnity Company.

[2] The district court signed a judgment granting Mr. Auttonberry's motion to dismiss his claims against USAA without prejudice on March 9, 2020.

## *Jury Selection*

We must first consider Mr. Auttonberry's fourth assignment of error, since it concerns the jury selection process and could potentially require a remand to the district court. Mr. Auttonberry alleges in his brief that during voir dire, some prospective jurors admitted to being unable to follow the law and/or be impartial. Mr. Auttonberry challenged these prospective jurors for cause, and the district court denied those challenges. As a result, Mr. Auttonberry claims he was forced to exhaust his peremptory challenges on impartial jurors who should have been excused for cause and was unable to excuse other prospective jurors from the jury panel. Mr. Auttonberry specifically addresses five jurors in his brief: Nicklos Speyrer, Keith Schexnayder, Ashley Matherne, Cynthia Stevens, and Natalie Miller.

Louisiana Code of Civil Procedure article 1765(2) provides that a juror may be challenged for cause when he "has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial." A trial judge is vested with broad discretion in ruling on challenges for cause, and the appellate court should not disturb its ruling unless the voir dire as a whole indicates an abuse of discretion. *Riddle v. Bickford*, 2000-2408 (La. 5/15/01), 785 So.2d 795, 801; *Palmer v. UV Insurance Risk Retention Group, Inc.*, 18-404 (La. App. 5 Cir. 12/19/18), 262 So.3d 1006, 1010, writ denied, 2019-0107 (La. 4/29/19), 268 So.3d 284.

If a prospective juror is able to state to the trial court's reasonable satisfaction that he could render an impartial verdict according to the law and evidence, a challenge for cause to that juror is properly denied. *Scott v. American Tobacco Company*, 2001-2498 (La. 9/25/01), 795 So.2d 1176, 1182. However, a challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from

4

which bias, prejudice, or inability to render judgment accordingly may be reasonably implied. *Palmer*, 262 So.3d at 1010. A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and the denial of such a challenge is not an abuse of discretion, if after further questioning the prospective juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. *Palmer*, 262 So.3d at 1010.

Prior to the counsel for the parties questioning the prospective jurors, the district court asked the prospective jurors as a panel if there was any reason that would prevent any of them being fair or impartial jurors in the instant case, or if they would be unable to listen to the evidence and apply the law as instructed. None of the prospective jurors answered or raised their hands.

*Nicklos Speyrer*

During voir dire, counsel for Mr. Auttonberry asked each prospective juror what he or she thought about when hearing the phrase "frivolous lawsuit." Mr. Speyrer answered, "So, in full disclosure, I have now been pretty active through LABI[3], trying to work on some of the tort reforms." When asked by counsel for Mr. Auttonberry if he was passionate about his work with LABI, Mr. Speyrer answered that he was. When asked if he could set that experience aside and be a judge in the instant case, the following exchange took place:

Q:    … Given that, I mean … and you seem to have a passion for [your work with LABI]. You probably have a passion for that, huh?

A:    I do.

Q:    [A]nd in all fairness and honesty … it'd be hard to set that aside and be a judge in this case, right?

A:    I mean, I --

Q:    It's a hard one to answer, I know.

---

[3] "LABI" stands for "Louisiana Association of Business and Industry."

A:    It's very hard to answer, but right.    There—there is that background, that broader, sort of, more macro bias ... I would hate to think I would apply it to an individual case or situation, but --

Q:    ... Is your best honest answer that it'd be very difficult to set that aside and be a hundred percent impartial here?

A:    Probably.

Later in voir dire, the jury was asked if any would hold it against Mr. Auttonberry that he is represented by a law firm that frequently advertises, and Mr. Speyrer raised his hand. When counsel for Mr. Auttonberry asked Mr. Speyrer if in a case such as the instant case, would he lean in favor of the defendant, Mr. Speyrer answered "yes." Counsel for Mr. Auttonberry subsequently called Mr. Speyrer out by asking:

Q:    I know a lot of people that say I wouldn't want anything to do with a large money verdict.  I would think, probably, Mr. Speyrer would feel that way, right?  I'm not—I don't want to be involved in a large personal injury verdict.  Right?

A:    Yes.

Counsel for Mr. Auttonberry then asked the jury if any would have difficulty with Cox being held responsible for the acts of its employees.  Mr. Speyrer raised his hand and stated, "... I own a business with two hundred employees that don't always make really, really good decisions, so that one just hits close to home."

In response, defense counsel asked Mr. Speyrer:

Q:    Mr. Speyrer, I felt like you were picked on some, so I got to ask you some specific questions here.  When [the district court] originally asked this whole panel if you would be able to fairly judge the facts and follow the law, I believe you said yes; is that correct?

A:    Yes.

Q:    Was there anything asked of you today that changes your opinion that you could follow the law as [the district court] instructed you—would instruct you do to [sic] at the end of this case?

A:    No.

Q:    ... But once you hear the facts, do you think if you hear the facts, and those facts [are] in favor of rendering a verdict—in favor of

6

Mr. Auttonberry, could you render that verdict, if [the district court] instructed you on the law and you felt the evidence followed that law?

A: Yes.

Defense counsel then asked Mr. Speyrer if he knew that if an employee of his was acting in the course and scope of his or her employment with his company, so long as the act was not an intentional tort, he would be responsible for that employee's actions. Mr. Speyrer responded that was correct. Mr. Speyrer was also asked if he would have a problem with rendering a verdict against Cox, and he said that he would not have a problem with it.

At a bench conference, counsel for Mr. Auttonberry moved to strike Mr. Speyrer for cause, based on his experience with tort reform and his admissions that he could not be a fair juror. Defense counsel stated that although Mr. Speyrer may not enjoy rendering a verdict against Cox, Mr. Speyrer nevertheless stated he could do it. The district court denied Mr. Auttonberry's challenge for cause against Mr. Speyrer, stating:

> ... I kept thinking to myself, if it goes another step, he's out of here. At the end of the day, though, when it was explained to him that he has to follow the law, would he do it? ... [H]e said well, yeah, if the evidence meets that. I ain't happy about it, it's not something I want to do. So I'm going to deny the motion for cause on [Mr. Speyrer].

Lastly, counsel for Mr. Auttonberry brought to the district court's attention Mr. Speyrer's opinion as a business owner of vicarious liability. The district court stated:

> ... I'm going to maintain my ruling. I think—the voir dire is done without their knowledge of what the law is and—which is the only reason I think a lot of them ... don't even know they're allowed to do such a thing. And ... I'll give them instruction[.] Yeah, the law allows for it, and here's how you do it, you know? So, I think once they get their instructions ... they made it real clear they'll follow the law.

When a juror's ability to be impartial is challenged, the district court must determine whether the juror can put aside his personal thoughts and apply the law

7

as instructed. *Sensat v. R360 Environmental Solutions, Inc.*, 2019-623 (La. App. 3 Cir. 3/11/20), 297 So.3d 52, 56, <u>writ denied</u>, 2020-00772 (La. 10/6/20), 302 So.3d 529. In the instant case, the district court made the required determination of whether Mr. Speyrer could put his personal opinions aside and impartially decide the case. Although Mr. Speyrer disclosed that he was involved in tort reform on behalf of LABI, an owner of a business of over two hundred employees, and generally favored the defendant in personal injury lawsuits that involved the vicarious liability of employers, he also clearly stated that he could judge the instant case based on the law as instructed, despite any personal feelings he might have had to the contrary. Mr. Speyrer was therefore sufficiently rehabilitated as a juror by the questions posed by defense counsel, and the district court did not abuse its discretion by denying Mr. Auttonberry's motion to excuse Mr. Speyrer for cause.

*Keith Schexnayder*

On the voir dire question concerning tort reform, Mr. Schexnayder said that like Mr. Speyrer, he was in favor of tort reform, but that he would not immediately think a case is a frivolous lawsuit and would hear the evidence. Mr. Schexnayder differentiated himself from Mr. Speyrer in saying he did not own a business and therefore was not as passionate about tort reform as Mr. Speyrer. Mr. Schexnayder stated to counsel for Mr. Auttonberry more than once that he could be fair and make a decision on the evidence given. Counsel for Mr. Auttonberry then posed a hypothetical question to Mr. Schexnayder that if he were in Mr. Auttonberry's place as the injured plaintiff, would he want someone as himself sitting in the jury. Mr. Schexnayder stated he probably would not want someone such as himself in the jury, because of his opinions on tort reform.

When asked whether he would have a problem with awarding money for pain and suffering as opposed to medical bills, Mr. Schexnayder stated,

8

"[W]hereas medical bills [are] medical, the doctor tells you that this is going to happen, then yeah, you can. ... Pain and suffering is just a little harder." Counsel for Mr. Auttonberry then asked Mr. Schexnayder if he would need to see more evidence than required by law, to which Mr. Schexnayder answered that he would. Mr. Schexnayder also stated that he would require a burden of proof higher than preponderance of the evidence to grant an award for pain and suffering.

Defense counsel followed up on the question of awarding pain and suffering by asking Mr. Schexnayder:

> Q: ... [H]opefully, you're given the evidence, and you can decide for yourself what ... Mr. Auttonberry is or is not owed ... [L]et's say you come to the conclusion that damages were owed to Mr. Auttonberry, and let's assume that the attorneys do a good job and explain to you what pain and suffering means, and ... why he would need it, why it's part of our system, why it should be awarded in this type of scenario. If they do that job and explain those things to you ... would you have a problem following the law and the evidence, and rendering that award at that point?
>
> A: No. No, not at that point. ... If the evidence supports it, correct.

Counsel for Mr. Auttonberry moved to strike Mr. Schexnayder for cause. The district court found that Mr. Schexnayder had been rehabilitated, stating:

> He's in favor of tort reform. He said he can take things by case-by-case basis and be fair. He struggles with the issue of pain and suffering, because he thinks that it's harder than medical bills to assess. He seems to have a problem with giving money damage[s] for pain and suffering, but I thought he was rehabilitated on that ... I think he was rehabilitated on the pain and suffering issue. Could you award it? Yes, he could, if the evidence showed it.

Counsel for Mr. Auttonberry pointed out that Mr. Schexnayder stated he would require a burden of proof higher than preponderance of the evidence to award damages for pain and suffering. Defense counsel argued that Mr. Schexnayder had been rehabilitated in that regard, stating:

> [Mr. Schexnayder] said [his] pain and suffering bias is that he really doesn't understand it. He doesn't understand that we're going to give money to [Mr. Auttonberry] just—for somebody who is injured, which is what we explained to the jury. ... I believe that when I asked him specifically about this case ... he said [he'd] want more. And I

9

asked him what that more was, and he said I ... need evidence, I need to see the facts. And I said ... if you were shown facts in this trial, and the evidence supports awarding pain and suffering, and the judge instructs you in the award of pain and suffering ... could you do it? And he said yes, he could.

The district court agreed with defense counsel that Mr. Schexnayder would follow the law if he were given sufficient evidence. The district court noted, as it had done with Mr. Speyrer, that although Mr. Schexnayder's personal opinions may be otherwise, he could nevertheless follow the law and evidence and award damages for pain and suffering if he found it necessary. We find that the district court properly denied Mr. Auttonberry's motion to strike Mr. Schexnayder for cause for the same reasons stated regarding Mr. Speyrer.

*Natalie Miller*

Ms. Miller appeared on the second panel of prospective jurors, and defense counsel was allowed to ask his questions first. During the questioning, Ms. Miller stated that her husband had been employed for about fifteen years as an information technology (IT) specialist by the law firm that represented Mr. Auttonberry.[4] The district court then asked Ms. Miller to approach the bench, along with counsel for the parties. Ms. Miller stated she knew a lot about the "inner-workings" of the law firm but would still be able to "listen to the case." Ms. Miller then stated that she did not have much respect for the firm, in regard for how she was once allegedly treated by one of the partners. She again stated that she could listen to Mr. Auttonberry's story and not be biased. She only felt that her husband was overworked at the law firm.

Ms. Miller then stated that she would prefer that someone other than herself sit as a juror, but that her opinions about the law firm would not affect her ability to fairly hear Mr. Auttonberry's case. Counsel for Mr. Auttonberry asked Ms.

---

[4] It is later mentioned by counsel for Mr. Auttonberry at bench conference that Ms. Miller was divorced from her husband.

Miller if she would treat Mr. Auttonberry equally to the defendant, and Ms. Miller said she would. The district court denied Mr. Auttonberry's motion to strike Ms. Miller for cause, noting that Ms. Miller stated she could be fair and impartial, and that she had also expressed bias toward Cox during voir dire.[5] Like Mr. Speyrer and Mr. Schexnayder, Ms. Miller demonstrated that she could separate her personal opinions from her task as a juror and render a fair and impartial verdict. The district court was therefore within its discretion to deny Mr. Auttonberry's motion to strike Ms. Miller for cause. See Sensat, 297 So.3d at 56.

*Cynthia Stevens*

When counsel for Mr. Auttonberry asked the prospective jurors if any felt that a "feather-weight" of proof in favor of the plaintiff was "too easy" for the burden of proof in a civil matter, Ms. Stevens raised her hand and said, "I think there needs to be more than just a feather's weight." While Ms. Stevens explained that she did not expect a plaintiff to prove his or her case beyond a reasonable doubt, she explained, "It doesn't have to be that big, but you know, proof that yes, that the person was very … hurt, like, suffered for it; you know, there's some justification … to, you know, a verdict." Counsel for Mr. Auttonberry then asked where her personal burden of proof fell between preponderance of the evidence and beyond reasonable doubt, and Ms. Stevens replied, "Maybe midway." Counsel for Mr. Auttonberry then asked Ms. Stevens if her idea of burden of proof is more than what the law allows to render a verdict for the plaintiff, and Ms. Stevens answered, "Yeah … probably so."

---

[5] Counsel for Mr. Auttonberry stated to the district court that Ms. Miller was seen during a recess talking on her cell phone about the instant case, but neither the district court nor Mr. Auttonberry took steps to verify this. Counsel for Mr. Auttonberry also stated that she had smelled what she suspected to be alcohol on Ms. Miller's breath. The district court stated that it could not smell alcohol on Ms. Miller's breath, and neither the district court nor Mr. Auttonberry took steps to verify this. Since the record does not contain evidence of either of these allegations, we cannot review them on appeal. See Our Lady of the Lake Hosp. v. Vanner, 95-0754 (La. App. 1 Cir. 12/15/95), 669 So.2d 463, 465, cert. denied, 525 U.S. 818, 119 S.Ct. 57, 142 L.Ed.2d 45 (1998).

In speaking with defense counsel, Ms. Stevens acknowledged that she would need more information on the case before reaching a decision. When asked if she heard that, more probable than not, Mr. Auttonberry endured pain and suffering and had future medical expenses, could she find for Mr. Auttonberry according to the burden of proof proscribed by law, Ms. Stevens responded, "Yes, if the evidence was there."

After counsel for Mr. Auttonberry moved to strike Ms. Stevens for cause, the district court said, "I don't even have anything under her that I have a concern about." Counsel for Mr. Auttonberry pointed out that Ms. Stevens stated she would require a higher burden of proof than preponderance of the evidence. The district court then addressed the entire panel by saying:

> If I instruct you that, that is the burden you decide it by, would anyone require more to do so? If so, please raise your hand. And I guess the question is whether ... you personally believe that it shouldn't be that way, you're still going to follow the law? Anybody who would say no, raise your hand.

None of the prospective jurors spoke or raised their hands, at which the district court stated to counsel for Mr. Auttonberry:

> I think that has been a theme through this whole thing. You were ... asking them questions that has to do with what their personal feelings are ... but when they're told they have to do it this way, they agree to do it the way you want, then—that's not what their personal feeling is. So, no one has said they won't do it that way. ... And so, I believe they're going to follow the law, and they will apply the standard that I'm going to tell them.

The district court then denied Mr. Auttonberry's motion to strike Ms. Stevens for cause. We find the district court made the proper inquiry, not just to Ms. Stevens, but to the whole jury panel to determine whether they could apply the correct burden of proof prescribed by law, and the motion to strike Ms. Stevens for cause was correctly denied.

*Ashley Matherne*

When asked by counsel for Mr. Auttonberry if she would need more proof than what the law requires to render a verdict for the plaintiff, Ms. Matherne stated she would need "more than just a feather," apparently meaning she would hold the plaintiff to a higher burden of proof than preponderance of the evidence. Counsel for Mr. Auttonberry then asked Ms. Matherne:

Q:    And if ... the Court instructs you that a feather's offset, plaintiff wins ... your best honest answer is that you can't follow that?

A:    Probably.

Q:    Probably? Be honest. Yes?

A:    Yeah.

Q:    You won't be able to follow, will you?

A:    Probably not.

Counsel for Mr. Auttonberry then moved to strike Ms. Matherne for cause because she stated she would not follow the appropriate burden of proof required by law to render a verdict. The district court pointed out that at the beginning of the voir dire hearing, when it asked the prospective jurors if they had any reasons why they felt they could not be impartial, properly evaluate evidence, or follow the law as instructed, Ms. Matherne gave no indication that she could not. The district court further stated that it believed Ms. Matherne would follow the law as instructed, and denied Mr. Auttonberry's motion to strike Ms. Matherne for cause.

A trial court has great discretion in ruling on challenges for cause and the appellate court should not disturb its ruling unless the voir dire as a whole indicates an abuse of discretion. *Rentrop v. Arch Insurance Company*, 2017-0635 (La. App. 1 Cir. 12/29/17), 241 So.3d 357, 372. We note that when asked individually by counsel for Mr. Auttonberry, Ms. Matherne stated she could "probably not" follow the law regarding the appropriate burden of proof. In the question raised by the

district court to the entire panel as to whether or not the prospective jurors would have difficulty following the law as instructed, which was raised shortly after the district court denied the motion to strike Ms. Matherne for cause, Ms. Matherne remained silent and did not raise her hand; Ms. Matherne's responses are at best equivocal, and the record has no other information that would clarify her response. See *State v. Dodson*, 2016-0473 (La. 10/18/17), 234 So.3d 34, 37.[6] We also find that there was no attempt by defense counsel to rehabilitate Ms. Matherne. However, we must review the entire voir dire process as a whole before making the determination whether the district court has abused its wide discretion in denying the challenge for cause involving Ms. Matherne. *Rentrop*, 241 So.3d at 372; see also *Sensat*, 297 So.3d at 56.

Viewing the voir dire process as a whole, we do not find that the district court abused its wide discretion in denying the challenges for cause of the aforementioned jurors. While Ms. Matherne was not rehabilitated to the extent of the other four jurors, when the district court asked if any juror felt he or she could not be a fair or impartial juror, Ms. Matherne did not respond.

Each party was allotted six peremptory challenges. In the first juror panel, Mr. Auttonberry used four of those six challenges to excuse Mr. Speyrer, Mr. Schexnayder, Ms. Stevens, and Ms. Matherne. In the second juror panel, Mr. Auttonberry used his fifth peremptory challenge to excuse Ms. Miller. After Ms. Miller, Mr. Auttonberry refrained from exercising his last peremptory challenge on seven subsequent prospective jurors, with two other prospective jurors excused by the defense's use of its peremptory challenges. Counsel for Mr. Auttonberry raised no objections against these jurors and did not move to challenge any of those jurors for cause.

---

[6] District courts may consider criminal jurisprudence when addressing challenges to jurors for cause in civil trials. *Sensat*, 297 So.3d at 56.

14

Mr. Auttonberry argues in his brief that he was forced to exhaust his peremptory challenges on potential jurors who admitted bias, and other jurors who should have been excused were forced to remain on the jury panel. We find no merit in this argument. On the contrary, the record indicates that Mr. Auttonberry found six prospective jurors suitable in the first panel, and seven prospective jurors suitable in the second panel. His final peremptory challenge was used to excuse the second-to-last prospective juror in the second panel. oreover, Mr. Auttonberry had the ability to excuse one of these prospective jurors but did not do so until there were enough jurors chosen to empanel a full jury. In a civil case, nine of twelve jurors must vote for a verdict in order for it to be legal. La. C.C.P. art. 1797(B); *Cane v. O'Brien*, 2023-0718 (La. App. 1 Cir. 2/23/24), 384 So.3d 1003, 1007, writ denied, 2024-00478 (La. 6/25/24), 386 So.3d 1082. The jury that heard Mr. Auttonberry's case consisted of at least nine jurors toward whom Mr. Auttonberry articulated no objection. Mr. Auttonberry's fourth assignment of error is therefore without merit.

### *Evidentiary Rulings*

#### *Unidentified Witness's Statement*

Defendants filed a motion *in limine* to exclude a statement made by an unknown eyewitness, which was allegedly recorded by Ofr. Rispone's body camera at the scene of the accident, as well as Mr. Auttonberry's own summary of her statement. The district court granted the defendants' motion, and ordered that the statements in question be redacted from the footage before it could be viewed by the jury. At trial, the jury viewed Ofr. Rispone's body camera footage, but the footage only shows Ofr. Rispone talking with Mr. Auttonberry and Mr. Davis.

The defendants argued that the statements of the unidentified witness and Mr. Auttonberry's summary are inadmissible as hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing,

15

offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay evidence is not admissible except as otherwise provided by the Louisiana Code of Evidence or other legislation. La. C.E. art. 802. Mr. Auttonberry argues that the unidentified witness's statement and his summary statement fall under the "present sense impression" exception to the hearsay rule. A present sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. La. C.E. 803(1). Mr. Auttonberry also argues the statement of the unidentified witness is admissible under the "unavailable declarant" exception of La. C.E. art. 804(B)(6).[7]

Mr. Auttonberry could not provide the name or address of the unidentified witness, and therefore the witness was unavailable to testify for trial. See La. C.E. art. 804(A). The statement of an unidentified witness who is unavailable to testify is inadmissible unless it falls into one of the hearsay exceptions. See *Jackson v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, 2019-0457 (La. App. 1 Cir. 5/26/20), 307 So.3d 227, 233, writ denied, 2020-00837 (La. 10/14/20), 302 So.3d 1117. Neither did Mr. Auttonberry proffer the testimony of the unidentified witness.[8] Because Mr.

---

[7] Louisiana Code of Evidence article 804(B)(6), in pertinent part, states:

> In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it. If, under the circumstances of a particular case, giving of this notice was not practicable or failure to give notice is found by the court to have been excusable, the court may authorize a delayed notice to be given, and in that event the opposing party is entitled to a recess, continuance, or other appropriate relief sufficient to enable him to prepare to meet the evidence.

[8] Mr. Auttonberry provides the unidentified witness' statement in his brief, which is not evidence. See *Distefano v. B & P Const., Inc.*, 04-25 (La. App. 5 Cir. 5/26/04), 874 So.2d 407, 411, writ denied, 2004-1735 (La. 10/15/04), 883 So.2d 1058.

Auttonberry failed to make proffer, he is barred procedurally from advancing this assignment of error on appeal. See *State v. Johnson*, 2000-0680 (La. App. 1 Cir. 12/22/00), 775 So.2d 670, 678-79, writ denied, 2002-1368 (La. 5/30/03), 845 So.2d 1066.

Furthermore, in determining whether a hearsay statement meets the present sense impression exception, the critical factor is whether the statement was made while the individual was "perceiving" the event or "immediately thereafter." This immediacy requirement permits only the passage of "time needed for translating observation into speech." *Buckbee v. United Gas Pipe Line Company, Inc.*, 561 So.2d 76, 84 (La. 1990). The party seeking to admit evidence under an exception to the hearsay rule has the burden to establish application of the exception. *Johnson*, 775 So.2d at 679. Without any proffer of the unidentified witness's statement, we cannot determine how soon after the accident the statement was made, or what the unidentified witness actually perceived. We therefore do not find that the statement of the unidentified witness, nor Mr. Auttonberry's summary of that statement, fit the present sense impression exception of the hearsay rule.[9] The district court was correct to exclude the two statements in question.

*Impeachment Evidence*

---

[9] We do not find that the statement of the unidentified witness meets the "catchall" exception of La. C.E. art. 804(B)(6). When invoking this exception, the court must first determine that the hearsay evidence is material, is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and that the admission of the evidence will serve general purposes of the evidence rules and the "interests of justice." *M & R Drywall, Inc. v. MAPP Construction, LLC*, 2017-0186, 2017-0187, 2017-0188 (La. App. 1 Cir. 4/29/19), 280 So.3d 260, 269, writs denied, 2019-01325, 01403, 2019-01411 (La. 11/19/19), 282 So.3d 1073-74, quoting *Buckbee*, 561 So.2d at 82 n.10. We note that Mr. Auttonberry was able to provide Ofr. Rispone his own impression of the accident as one of the involved drivers. Mr. Auttonberry's own impression of the accident is more probative than an unidentified witness's statement that is not contained in the record; therefore we do not find it would serve the interests of justice to admit the unidentified witness's statement under La. C.E. art. 804(B)(6).

17

When asked on cross-examination if he considered himself a defensive driver, Mr. Auttonberry stated that he did.[10] When asked if he was an aggressive driver, Mr. Auttonberry said he was not. According to Mr. Davis's account of the accident, Mr. Auttonberry darted into his lane of travel in order to get around the cars in front of him. Mr. Auttonberry stated that was not something he would do to get around traffic. Defense counsel asked Mr. Auttonberry if, since 2019, he had ever illegally used a turning lane to pass up cars ahead of him. Mr. Auttonberry stated he had not. Defense counsel then asked Mr. Auttonberry if he generally follows the speed limit when he drives, to which Mr. Auttonberry answered that he "generally" does. When defense counsel asked Mr. Auttonberry if he considered himself as having a "lead foot," Mr. Auttonberry said that he did not.

Defense counsel approached the bench at that time and voiced his intent to introduce evidence of traffic citations Mr. Auttonberry received on dates prior to the accident. Defense counsel noted that the district court had previously ruled that the traffic citations were inadmissible as evidence, but that Mr. Auttonberry had just stated that he does not speed, which, according to defense counsel, "opens the door for impeachment" with the traffic citations. Counsel for Mr. Auttonberry responded by stating that defense counsel was mischaracterizing Mr. Auttonberry's testimony, pointing out that Mr. Auttonberry did not say he had never sped in his life, but that he generally follows the speed limit. The district court ruled that Mr. Auttonberry's response "opens the door" to impeachment evidence.

Defense counsel then asked Mr. Auttonberry if he received in 2019 two speeding citations, to which Mr. Auttonberry said that he did. He admitted that the first citation was for driving fifty miles per hour in a thirty-five miles per hour

---

[10] Defense counsel prefaced the question by defining a defensive driver as "constantly keeping aware of your surroundings to make sure that, even if somebody else is negligent, you can prevent an accident because you're aware."

zone, and the other citation was for driving sixteen to twenty miles per hour over the speed limit.[11]

Defense counsel called Rodney Perro, a private investigator who was hired by the defendants to conduct surveillance on Mr. Auttonberry's driving habits after the accident. Prior to Mr. Perro's testimony, counsel for Mr. Auttonberry objected to Mr. Perro potentially giving his opinion as testimony. The district court overruled the objection, stating that Mr. Perro can testify as to his own observations of Mr. Auttonberry's driving. Mr. Perro then testified that he monitored Mr. Auttonberry and took videos of him over two days in 2022. The videos are not of Mr. Auttonberry driving his vehicle, but Mr. Perro testified he witnessed Mr. Auttonberry on the first day driving in excess of a "good, safe speed limit," on a curve with a forty to forty-five miles per hour speed limit, with Mr. Auttonberry driving at fifty-five to sixty miles per hour. Mr. Perro gauged Mr. Auttonberry's speed by watching his own speedometer while he was following Mr. Auttonberry at the same speed. Mr. Perro then testified that on the second day of surveillance, he attempted to follow Mr. Auttonberry as he drove but lost sight of him on Highway 61 toward St. Francisville, Louisiana, where there was a bottleneck of heavy traffic, and Mr. Auttonberry sped up to get ahead of a car. It was at that point that Mr. Perro lost sight of him.

Defense counsel then called Trooper John Cannon of the Louisiana State Police as an impeachment witness, accompanied by dash camera footage taken by

---

[11] Later in the trial, counsel for Mr. Auttonberry attempted to introduce evidence of traffic citations Mr. Davis pled guilty to prior to the accident, after Mr. Davis could not accurately recall how many traffic citations he had received in his lifetime. Defense counsel objected to the introduction of the traffic citations, and the district court sustained the objection. Mr. Auttonberry now argues that the district court made contradictory evidentiary rulings regarding impeachment evidence of the same kind, and therefore Mr. Auttonberry is entitled to a new trial. Regardless of whether the district court erred in refusing to admit evidence of Mr. Davis's prior traffic citations, we disagree that it entitles Mr. Auttonberry to a new trial. Defense counsel properly introduced other impeachment evidence against Mr. Auttonberry that was clearly proper, to wit: the testimony of Rodney Perro, and the dash camera footage of Trooper John Cannon. We find this other evidence on its own was sufficient to impeach Mr. Auttonberry's credibility.

Tpr. Cannon when he made a traffic stop of Mr. Auttonberry. Prior to Tpr. Cannon's testimony, counsel for Mr. Auttonberry objected to the dash camera footage being displayed, claiming she had not been given an opportunity to view the video, and that the evidence would be irrelevant. The district court allowed the video over the objection, stating that is was being introduced for the sole purpose of impeaching Mr. Auttonberry's statements that he is a safe driver.

Trooper Cannon testified that he initiated a traffic stop of Mr. Auttonberry on January 10, 2022. He stated he observed Mr. Auttonberry driving at eighty-seven miles per hour in a fifty-five miles per hour zone, verified by Tpr. Cannon's radar. Defense counsel then played the dash camera footage for the jury. Since Tpr. Cannon engaged his police lights on a bridge with little shoulder, Mr. Auttonberry continued to the end of the bridge, where lanes merged. Tpr. Cannon observed Mr. Auttonberry increase speed to get ahead of a car before merging. Once off the bridge, Tpr. Cannon observed Mr. Auttonberry hit his brakes suddenly and swerve to the right shoulder of the highway. Tpr. Cannon stated that because of Mr. Auttonberry's maneuver, he had to stop very close to the rear of Mr. Auttonberry's vehicle, and his police cruiser was "almost perpendicular" to the highway as he stopped.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. In questions of relevancy of evidence, much discretion is vested in the trial court, and its rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. *State v. Kitts*, 2017-0777 (La. App. 1 Cir. 5/10/18), 250 So.3d 939, 965, writ denied, 2018-00872 (La. 1/28/20), 291 So.3d 1057.

Generally, a witness not testifying as an expert may not give testimony in the form of opinions or inferences. However, the rule is subject to the limited

20

exception of La. C.E. art. 701, which provides that a lay witness may provide testimony in the form of opinions or inferences where those opinions or inferences are rationally based upon the perception of the witness and helpful to a clear understanding of his testimony or determination of a fact at issue. *Louisiana Land and Exploration Co. v. Verdin*, 95-2579 (La. App. 1 Cir. 9/27/96), 681 So.2d 63, 66, writ denied, 96-2629 (La. 12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997).

A witness's credibility may be attacked intrinsically concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony. La. C.E. art 607(C). Extrinsic evidence, such as evidence contradicting the witness's testimony, is admissible when offered solely to attack the credibility of a witness unless the district court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. La. C.E. art. 607 (D)(2). A district court is given wide discretion when deciding whether to admit impeachment evidence. *State v. Rose*, 50,861 (La. App. 2 Cir. 9/28/16), 206 So.3d 1102, 1111 n.6, writ denied, 2016-1943 (La. 9/15/17), 225 So.3d 487.

In the instant case, defense counsel first asked Mr. Auttonberry whether he was an aggressive driver, which Mr. Auttonberry denied. He was then asked whether he had ever illegally used a turning lane to get ahead of traffic, which he denied. Mr. Auttonberry was then asked if he had a "lead foot," which he denied. It was at that point that defense counsel impeached Mr. Auttonberry intrinsically by asking him if he had received two traffic citations in 2019. This question was asked in response to Mr. Auttonberry saying he "generally" followed the speed limit. Although Mr. Perro was a lay witness, he provided opinion testimony based on his own observations of Mr. Auttonberry's driving in excess of the speed limit, and this testimony was based on reasonable inferences he made from observing the

21

speedometer in his vehicle while following Mr. Auttonberry at the same speed. Mr. Perro also observed Mr. Auttonberry speed ahead of another car before merging into traffic, which is the same driving tactic that Mr. Davis stated resulted in his accident with Mr. Auttonberry. Finally, the dash camera footage of Tpr. Cannon was introduced to impeach Mr. Auttonberry on his statements that he generally followed the speed limit, and that he does not illegally use lanes to merge ahead of traffic.

All the aforementioned evidence fits the definitions of intrinsic and extrinsic evidence introduced solely for the purpose of impeaching Mr. Auttonberry's credibility. Based on the district court's wide discretion to admit such evidence, we find that the aforementioned evidence was relevant and probative to the issue of Mr. Auttonberry's credibility. Although Mr. Auttonberry argues that the introduction of this impeachment evidence is in violation of La. C.E. art. 608(B),[12] the evidence was not used to attack his character for truthfulness but rather was used to attack specific statements Mr. Auttonberry had made on cross-examination at trial and was relevant to the issue surrounding those statements.[13] Mr. Auttonberry's second assignment of error is therefore without merit.

In Mr. Auttonberry's third assignment of error, he claims the district court erred in allowing the defendants to introduce surveillance video evidence to impeach him regarding the extent of his injuries. On direct examination, Mr. Auttonberry testified that since the accident, his ability to bend at his waist is

---

[12] Louisiana Code of Evidence article 608(B) states, in pertinent part:

> Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness.

[13] Compare to *Brewer v. J.B. Hunt Transport, Inc.*, 2008-1666 (La. App. 1 Cir. 3/18/09), 9 So.3d 932, 942-43, reversed on other grounds, 2009-1408, 2009-1428 (La. 3/16/10), 35 So.3d 230, where evidence of plaintiff's drug use was introduced on the issue of quantum, when it had been stipulated that there was no evidence of drug use contributing to plaintiff's injury. This court found that a single, isolated instance of drug use by plaintiff resulting in his termination of employment was not indicative of his future employment potential, and that testimony regarding plaintiff's prior drug use and arrests was irrelevant and, therefore, inadmissible.

limited. On cross-examination, Mr. Auttonberry was asked again if he cannot lift anything, to which he answered, "Just anything of any weight." At that point, defense counsel attempted to play a series of surveillance videos of Mr. Auttonberry, and counsel for Mr. Auttonberry objected. Defense counsel stated the surveillance videos were impeachment evidence because Mr. Auttonberry "said he can't bend or pick up anything of substance." Counsel for Mr. Auttonberry said that defense counsel had mischaracterized Mr. Auttonberry's statement, stating that Mr. Auttonberry stated that he could bend. The district court overruled the objection and allowed defense counsel to proceed.

Regardless of whether the district court was correct or not to allow these surveillance videos of Mr. Auttonberry into evidence, the jury found that Mr. Davis was not at fault for the accident, and that Mr. Auttonberry was not entitled to damages. We have not disturbed the jury's verdict with respect to the issue of liability, and therefore the third assignment of error, and any arguments Mr. Auttonberry may have regarding the issue of his injuries, are moot.

**DECREE**

The judgment of the Nineteenth Judicial District Court, which adopts the unanimous jury verdict in the instant case, finding the defendants-appellees, Cox Communications, Inc. and Eugene Davis, not at fault and dismissing the suit of plaintiff-appellant, Brett Auttonberry, with prejudice, is affirmed. Costs of this appeal are assessed Mr. Auttonberry.

**AFFIRMED.**